United States Courts
Southern District of Texas
FILED

JAN 10 2017

David J. Bradley, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § § | |
| v. § § | CRIMINAL NO. H-10-459-SS |
| WILMAR RENE DURAN-GOMEZ § aka "El Gordo," aka "Junior," aka § "Oscar," aka "Carnalito" and § EFRAIN RODRIGUEZ-MENDOZA § aka "Chino," aka "Chenton," aka § "Chente," aka "Vicente Garduno" § | |

## SECOND SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

### Count One
### [Conspiracy to Transport and Harbor Aliens – 8 U.S.C. § 1324(a)(1)(A)(v)(I)]

Beginning from in or about January 2005, until on or about November 21, 2006, within the Southern District of Texas and elsewhere, the defendants,

**WILMAR RENE DURAN-GOMEZ**
aka "El Gordo," aka "Junior," aka "Oscar," aka "Carnalito"
and
**EFRAIN RODRIGUEZ-MENDOZA**
aka "Chino," aka "Chenton," aka "Chente," aka "Vicente Garduno"

did knowingly combine, conspire, confederate and agree, with each other and with other persons known and unknown to the Grand Jury, to commit an offense against the United States, that is: to transport and harbor illegal aliens within the United States, in any manner whatsoever, knowing and in reckless disregard of the fact

1

that such aliens had entered the United States illegally; in violation of Title 8, United States Code Sections 1324(a)(1)(A)(ii), 1324(a)(1)(A)(iii), and 1324(a)(1)(B)(i).

## Manner and Means of the Conspiracy

1. Smuggled aliens were brought to areas in Mexico by alien smugglers who intended to bring them illegally into the United States.

2. Smuggled aliens were taken to staging areas south of the United States border.

3. Smuggled aliens were then guided across the border into the United States where they were taken to staging areas north of the United States border, but south of various Border Patrol checkpoints.

4. Smuggled aliens were then guided on foot to locations north of the Border Patrol check point.

5. Smuggled aliens were transported to Houston, Texas, where they were held until their relatives and/or friends paid a "smuggling fee" for their release.

6. After the smuggling fees were paid, arrangements were made to deliver the smuggled aliens to various locations throughout the United States. If the final destination was a city other than Houston, Texas, an additional fee was incurred for the aliens' transportation.

## Overt Acts

In furtherance of the conspiracy described herein, one or more of the co-conspirators committed one or more of the following overt acts in the Southern District of Texas and elsewhere:

1. Beginning in or about January 2005, with the assistance of others known and unknown to the Grand Jury, **WILMAR RENE DURAN-GOMEZ** smuggled illegal aliens into the United States for money. To this end, he formed two transportation companies, Transportes Junior's and Transporte Sabrina, to facilitate his illegal alien transportation operation.

2. **WILMAR RENE DURAN-GOMEZ** created or caused to be created trip manifests, which showed the names of the smuggled aliens and their respective debts, under the name of Transportes Junior's which showed that Duran had been in the transportation business beginning since approximately January 2003.

3. **WILMAR RENE DURAN-GOMEZ** created or caused to be created ledgers, referred to as "pollo lists," which contained the names of smuggled aliens who were harbored at 7315 Ashcroft Drive, Building D, # 116, Houston, Texas 77081.

4. Sometime before November 6, 2006, a co-conspirator known to the Grand Jury and **EFRAIN RODRIGUEZ-MENDOZA** went to work for **WILMAR RENE DURAN-GOMEZ** as guards in his illegal alien transportation operation.

5. Sometime before November 6, 2006, co-conspirators known to the Grand Jury went to work for **WILMAR RENE DURAN-GOMEZ** as drivers in his illegal alien transportation operation.

6. Sometime before November 6, 2006, a co-conspirator and **EFRAIN RODRIGUEZ-MENDOZA** went to work for **WILMAR RENE DURAN-GOMEZ** as guards at 7315 Ashcroft Drive, Building D, #116, Houston, Texas 77081.

7. On or about November 6, 2006, at **WILMAR RENE DURAN-GOMEZ's** instruction, unknown co-conspirators delivered illegal aliens to 7315 Ashcroft Drive, Building D, # 116, Houston, Texas 77081. The load of smuggled aliens included Abelardo Sagastume. Hector LNU, an illegal alien, had already been delivered to 7315 Ashcroft Drive, Building D, # 116, Houston, Texas 77081, when Sagastume arrived.

8. Upon the arrival of the illegal aliens on or about November 6, 2006, a co-conspirator and **EFRAIN RODRIGUEZ-MENDOZA** opened the

4

warehouse overhead garage door and allowed the illegal aliens to enter the warehouse. The co-conspirator and **EFRAIN RODRIGUEZ-MENDOZA** gave the illegal aliens instructions to undress completely with the exception of underwear; they also instructed them not to talk, make noise, or wander in the hallways.

9. On or about November 7, 2006, a co-conspirator and **EFRAIN RODRIGUEZ-MENDOZA** informed the illegal aliens there was a fire in the warehouse. Shortly thereafter, the co-conspirator and **EFRAIN RODRIGUEZ-MENDOZA** loaded the illegal aliens in two vans and removed the aliens from the warehouse due to the fire.

10. On or about November 7, 2006, upon returning to the warehouse after the fire, a co-conspirator called **WILMAR RENE DURAN-GOMEZ**, whom he referred to as "Carnalito," to inform him of the fire incident. **WILMAR RENE DURAN-GOMEZ** went to the warehouse to determine what had occurred. The co-conspirator told him that the illegal aliens had set the fire in an attempt to escape from the warehouse.

11. In or about November 2006, **WILMAR RENE DURAN-GOMEZ** along with a co-conspirator and **EFRAIN RODRIGUEZ-MENDOZA** agreed to beat the aliens until they revealed who had set

5

the fire. **WILMAR RENE DURAN-GOMEZ** and **EFRAIN RODRIGUEZ-MENDOZA** beat the illegal aliens repeatedly over several days. During this time frame, it was determined that Hector LNU and Abelardo Sagastume were responsible for the fire. Once their identities were revealed, **WILMAR RENE DURAN-GOMEZ** and **EFRAIN RODRIGUEZ-MENDOZA,** beat Abelardo Sagastume and Hector LNU as punishment, while continuing to beat the other aliens.

12. In or about November 2006, **WILMAR RENE DURAN-GOMEZ** and **EFRAIN RODRIGUEZ-MENDOZA** beat Abelardo Sagastume and Hector LNU at 7315 Ashcroft Drive, Building D,# 116, Houston, Texas 77081, causing them to die from their injuries.

13. In or about November 2006, **WILMAR RENE DURAN-GOMEZ** caused the bodies of Abelardo Sagastume and Hector LNU to be moved from 7315 Ashcroft Drive, Building D, # 116, Houston, Texas 77081 to a vacant field in Fort Bend County, Texas, where the aforementioned bodies were discovered on or about November 15, 2006.

14. After the bodies were discovered, **WILMAR RENE DURAN-GOMEZ** caused items to be removed from his house, to include: a

computer, "pollo lists", approximately $36,000 in U.S. currency, and firearms. The items were removed in an attempt to prevent their discovery and seizure by law enforcement officers.

**All in violation of Title 8, United States Code, Section 1324(a)(1)(A)(v)(I).**

**Count Two**
**[Harboring – 8 U.S.C. §§ 1324(a)(1)(A)(iii), 1324(a)(1)(B)(i), and 1324(a)(1)(A)(v)(II), 1324(a)(1)(B)(iv)]**

Between on or about November 6, 2006, and November 15, 2006, in the Houston Division of the Southern District of Texas, the defendants

**WILMAR RENE DURAN-GOMEZ**
aka "El Gordo," aka "Junior," aka "Oscar," aka "Carnalito"
and
**EFRAIN RODRIGUEZ-MENDOZA**
aka "Chino," aka "Chenton," aka "Chente," aka "Vicente Garduno"

each aiding and abetting one another, knowing and in reckless disregard of the fact that a certain alien, namely, Abelardo Sagastume, had come to, entered and remained in the United States in violation of law, did conceal, harbor, and shield from detection, and attempt to conceal, harbor, and shield from detection, Abelardo Sagastume at 7315 Ashcroft Drive, Building D, # 116, Houston, Texas, 77081, and did so for the purpose of private financial gain.

The death of Abelardo Sagastume resulted during and in relation to the above described offense.

**In violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iii), 1324(a)(1)(B)(i), 1324(a)(1)(A)(v)(II), 1324(a)(1)(B)(iv).**

## Count Three
### [Harboring – 8 U.S.C. §§ 1324(a)(1)(A)(iii), 1324(a)(1)(B)(i), and 1324(a)(1)(A)(v)(II), 1324(a)(1)(B)(iv)]

Between on or about November 6, 2006, and November 15, 2006, in the Houston Division of the Southern District of Texas, the defendants

**WILMAR RENE DURAN-GOMEZ**
aka "El Gordo," aka "Junior," aka "Oscar," aka "Carnalito"
and
**EFRAIN RODRIGUEZ-MENDOZA**
aka "Chino," aka "Chenton," aka "Chente," aka "Vicente Garduno"

each aiding and abetting one another, knowing and in reckless disregard of the fact that a certain alien, namely, Hector LNU, had come to, entered and remained in the United States in violation of law, did conceal, harbor, and shield from detection, and attempt to conceal, harbor, and shield from detection, Hector LNU at 7315 Ashcroft Drive, Building D, # 116, Houston, Texas 77081, and did so for the purpose of private financial gain.

The death of Hector LNU resulted during and in relation to the above described offense.

**In violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iii), 1324(a)(1)(B)(i), 1324(a)(1)(A)(v)(II), 1324(a)(1)(B)(iv).**

## Count Four
## [Kidnapping – 18 U.S.C. §1201(a)(1)]

Between on or about November 6, 2006, and November 15, 2006, in the Houston Division of the Southern District of Texas, the defendants

**WILMAR RENE DURAN-GOMEZ**
aka "El Gordo," aka "Junior," aka "Oscar," aka "Carnalito"
and
**EFRAIN RODRIGUEZ-MENDOZA**
aka "Chino," aka "Chenton," aka "Chente," aka "Vicente Garduno"

each aiding and abetting one another, did unlawfully and willfully seize, confine, and hold for ransom and reward a person, namely Abelardo Sagastume, and, in committing or in furtherance of the commission of the offense, did use a means, facility, and instrumentality of interstate and foreign commerce, to wit: cellular telephones, manifests, U.S. currency, interstate highways, locations in several states, and motor vehicles.

The death of Abelardo Sagastume resulted during and in relation to the above described offense.

**In violation of Title 18, United States Code, Section 1201(a)(1) and Title 18, United States Code, Section 2.**

## Count Five
## [Kidnapping – 18 U.S.C. §1201(a)(1)]

Between on or about November 6, 2006, and November 15, 2006, in the Houston Division of the Southern District of Texas, the defendants

**WILMAR RENE DURAN-GOMEZ
aka "El Gordo," aka "Junior," aka "Oscar," aka "Carnalito"
and
EFRAIN RODRIGUEZ-MENDOZA
aka "Chino," aka "Chenton," aka "Chente," aka "Vicente Garduno"**

each aiding and abetting one another, did unlawfully and willfully seize, confine, and hold for ransom and reward a person, namely Hector LNU, and, in committing or in furtherance of the commission of the offense, did use a means, facility, and instrumentality of interstate and foreign commerce, to wit: cellular telephones, manifests, U.S. currency, interstate highways, locations in several states, and motor vehicles.

The death of Hector LNU resulted during and in relation to the above described offense.

**In violation of Title 18, United States Code, Section 1201(a)(1) and Title 18, United States Code, Section 2.**

## Count Six
## [Hostage Taking – 18 U.S.C. § 1203]

Between on or about November 6, 2006, and November 15, 2006, in the Houston Division of the Southern District of Texas, the defendants

**WILMAR RENE DURAN-GOMEZ**
aka "El Gordo," aka "Junior," aka "Oscar," aka "Carnalito"
and

**EFRAIN RODRIGUEZ-MENDOZA**
aka "Chino," aka "Chenton," aka "Chente," aka "Vicente Garduno"

each aiding and abetting one another, did intentionally seize and detain and threaten to kill, injure, and continue to detain Abelardo Sagastume in order to compel the family of Abelardo Sagastume to pay them $1,600 to $1,700, as an explicit and implicit condition for the release of Abelardo Sagastume.

The death of Abelardo Sagastume resulted during and in relation to the above described offense.

**In violation of Title 18, United States Code, Section 1203 and Title 18, United States Code, Section 2.**

## Count Seven
### [Hostage Taking – 18 U.S.C. § 1203]

Between on or about November 6, 2006, and November 15, 2006, in the Houston Division of the Southern District of Texas, the defendants

**WILMAR RENE DURAN-GOMEZ**
aka "El Gordo," aka "Junior," aka "Oscar," aka "Carnalito"
and
**EFRAIN RODRIGUEZ-MENDOZA**
aka "Chino," aka "Chenton," aka "Chente," aka "Vicente Garduno"

each aiding and abetting one another, did intentionally seize and detain and threaten to kill, injure, and continue to detain Hector LNU in order to compel the

11

family of Hector LNU to pay them $1,600 to $1,700, as an explicit and implicit condition for the release of Hector LNU.

The death of Hector LNU resulted during and in relation to the above described offense.

**In violation of Title 18, United States Code, Section 1203 and Title 18, United States Code, Section 2.**

## NOTICE OF SPECIAL FINDINGS

### Defendant WILMAR RENE DURAN-GOMEZ aka "El Gordo," aka Junior," aka "Oscar," aka "Carnalito"

The Grand Jury repeats, realleges and incorporates the allegations in Counts Two, Three, Four, Five, Six, and Seven of this Indictment. As to Counts Two, Three, Four, Five, Six, and Seven, defendant **WILMAR RENE DURAN-GOMEZ, aka "El Gordo," aka "Junior," aka "Oscar," aka "Carnalito":**

1. was 18 years of age or older at the time of the offense;

2. intentionally inflicted serious bodily injury that resulted in the deaths of Abelardo Sagastume [Counts Two, Four, and Six] and Hector LNU [Counts Three, Five, and Seven] (Title 18, United States Code, Section 3591(a)(2)(B));

3. intentionally participated in one or more acts, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Abelardo Sagastume [Counts Two, Four, and Six] and Hector LNU [Counts Three, Five, and Seven] died as a direct result of such act or acts (Title 18, United States Code, Section 3591 (a)(2)(C));

4.    intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victims, Abelardo Sagastume [Counts Two, Four, and Six] and Hector LNU [Counts Three, Five, and Seven], died as a direct result of the act (Title 18, United States Code, Section 3591 (a)(2)(D));

5.    committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victims, Abelardo Sagastume [Counts Two, Four, and Six] and Hector LNU [Counts Three, Five, and Seven] (Title 18, United States Code, Section 3592(c)(6));

6.    during the commission of the offense knowingly created a grave risk of death to one or more persons in addition to the victims, Abelardo Sagastume [Counts Two, Four, and Six] and Hector LNU [Counts Three, Five, and Seven] (Title 18, United States Code, Section 3592(c)(5));

7.    intentionally killed or attempted to kill more than one person in a single criminal episode (Title 18, United States Code, Section 3592(c)(16));

8.    committed the offense after substantial planning and premeditation to cause the deaths of Abelardo Sagustume [Counts Two, Four, and Six] and Hector LNU [Counts Three, Five, and Seven] (Title 18, United States Code, Section 3592(c)(9));

9.    Abelardo Sagustume [Counts Two, Four, and Six] was particularly vulnerable due to infirmity (Title 18, United States Code, Section 3592(c)(11));

10.   Hector LNU [Counts Three, Five, and Seven] was particularly vulnerable due to infirmity (Title 18, United States Code, Section 3592(c)(11));

11.   the death or injury resulting in death, occurred during the commission or attempted commission of an offense under Title 18, United States Code, Section 1203, hostage taking; and Title 18, United States Code,

Section 1201, kidnapping (Title 18, United States Code, Section 3592(c)(1)).

**Pursuant to Title 18, United States Code, Sections 3591 and 3592.**

### NOTICE OF SPECIAL FINDINGS

### Defendant EFRAIN RODRIGUEZ-MENDOZA aka "Chino," aka "Chenton," aka "Chente,"aka "Vicente Garduno"

The Grand Jury repeats, realleges and incorporates the allegations in Counts Two, Three, Four, Five, Six and Seven of this Indictment. As to Counts Two, Three, Four, Five, Six, and Seven, defendant **EFRAIN RODRIGUEZ-MENDOZA aka "Chino," aka "Chenton," aka "Chente,"aka "Vicente Garduno":**

1. was 18 years of age or older at the time of the offense;

2. intentionally inflicted serious bodily injury that resulted in the deaths of Abelardo Sagastume [Counts Two, Four, and Six] and Hector LNU [Counts Three, Five, and Seven] (Title 18, United States Code, Section 3591(a)(2)(B));

3. intentionally participated in one or more acts, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, Abelardo Sagastume [Counts Two, Four, and Six] and Hector LNU [Counts Three, Five, and Seven] died as a direct result of such act or acts (Title 18, United States Code, Section 3591 (a)(2)(C));

4. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victims, Abelardo Sagastume [Counts Two, Four, and Six] and Hector LNU

14

[Counts Three, Five, and Seven], died as a direct result of the act (Title 18, United States Code, Section 3591 (a)(2)(D));

5. committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victims, Abelardo Sagastume [Counts Two, Four, and Six] and Hector LNU [Counts Three, Five, and Seven] (Title 18, United States Code, Section 3592(c)(6));

6. during the commission of the offense knowingly created a grave risk of death to one or more persons in addition to the victims Abelardo Sagastume [Counts Two, Four, and Six] and Hector LNU [Counts Three, Five, and Seven] (Title 18, United States Code, Section 3592(c)(5));

7. committed the offense as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value (Title 18, United States Code, Section 3592(c)(8));

8. intentionally killed or attempted to kill more than one person in a single criminal episode (Title 18, United States Code, Section 3592(c)(16)).

9. committed the offense after substantial planning and premeditation to cause the deaths of Abelardo Sagustume [Counts Two, Four, and Six] and Hector LNU [Counts Three, Five, and Seven] (Title 18, United States Code, Section 3592(c)(9));

10. Abelardo Sagustume [Counts Two, Four, and Six] was particularly vulnerable due to infirmity (Title 18, United States Code, Section 3592(c)(11));

11. Hector LNU [Counts Three, Five, and Seven] was particularly vulnerable due to infirmity (Title 18, United States Code, Section 3592(c)(11));

12. the death or injury resulting in death, occurred during the commission or attempted commission of an offense under Title 18, United States Code, Section 1203, hostage taking; and Title 18, United States Code,

15

Section 1201, kidnapping (Title 18, United States Code, Section 3592(c)(1)).

**Pursuant to Title 18, United States Code, Sections 3591 and 3592.**

A TRUE BILL

Original Signature on File
FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

By: _____
Jill Jenkins Stotts
Assistant United States Attorney

_____
Ruben R. Perez
Assistant United States Attorney

_____
James B. Nelson
Trial Attorney
United States Department of Justice
Capital Case Section

16