1        **UNITED STATES DISTRICT COURT**
           **SOUTHERN DISTRICT OF TEXAS**
2          **HOUSTON DIVISION**

3

4  UNITED STATES OF AMERICA    *    4:10-CR-459
                        *    Houston, Texas
5  VS.                    *
                        *    10:10 a.m.
6  WILMAR RENE DURAN-GOMEZ,    *    October 11, 2012
  ET al
7

8               **STATUS CONFERENCE**

9

         **BEFORE THE HONORABLE KENNETH M. HOYT**
10           **UNITED STATES DISTRICT JUDGE**

11

 **APPEARANCES:**
12

 **FOR THE GOVERNMENT:**
13 Ruben R. Perez
 OFFICE OF THE U.S. ATTORNEY
14 1000 Louisiana, Suite 2300
 Houston, Texas 77002
15 713.567.9347

16 **FOR DEFENDANT WILMAR RENE DURAN-GOMEZ:**
 Wendell A. Odom, Jr. and Neil Davis, III
17 LAW OFFICES OF WENDELL ODOM & NEAL DAVIS, III
 440 Louisiana, Suite 200
18 Houston, Texas 77002
 713.223.5575
19

20 **FOR DEFENDANT JOSE ALBERTO BOLANOS-GARZA:**
 Gerardo S.  Montalvo
21 THE MONTALVO LAW FIRM, PLLC
 Park Central Plaza
22 1111 North Loop West, Suite 820
 Houston, Texas 77008
23 713.526.5002

24

25

1  **FOR DEFENDANT PATRICIA HOLGUIN:**
   John Riley Friesell
2  FRIESELL WESTERLAGE, PLLC
   One City Centre
3  1021 Main Street, Suite 1250
   Houston, Texas 77002
4  713.236.9177

5

6  **FOR DEFENDANT MAURICIO MERCADO:**
   Thomas A. Glenn
7  Attorney at Law
   2500 City West Blvd., Suite 300
8  Houston, Texas 77042
   713.266.4600

9

10

   Court Reporter:
11 Johnny C. Sanchez, RPR, RMR, CRR
   515 Rusk, #8004
12 Houston, Texas 77002
   713.250.5581

13

   Proceedings recorded by mechanical stenography.   Transcript
14 produced by computer-assisted transcription.

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  Good morning, ladies and gentlemen.

2  I called this conference because of the notice that has

3  been recently filed that you each obviously are aware of in

4  this case from the Department of Justice.  And to get some

10:11:15   5  sense from both sides direction that you want to go, in

6  terms of time preparations and how we go forward in this

7  case.  But as well also to make sure that the defense and

8  defendants' perspective, that we have eyes on what the law

9  permits us to do, in terms of lawyers and representation.

10:11:43  10  So I think that at least Mr. Mosbacker and Mr. Montalvo,

11  there's going to be a parting ways of one way or the other.

12  And I believe you've got the same defendant in a different

13  case, I believe; is that right?  Who am I looking at?  Let

14  me get my glasses back on.

10:12:07  15          MR. MONTALVO:  I lost a little weight.  That's

16  probably why you couldn't see me.

17          THE COURT:  Must be my glasses.  But you are

18  representing Mr. Garza, I believe, in a immigration, let's

19  call it, for lack of a better term, immigration case that's

10:12:28  20  been sort of sitting on the back burner for a long time.

21  So that representation certainly continues, or will pick

22  up -- whatever the appropriate way to say that -- but in

23  terms of the question of the -- your -- the dual

24  representation of Mr. Garza in this case that needs to end

10:12:52  25  October 4th, whatever that date is.  So I expect we can

1 talk about that a little afterwards, but we can also make

2 sure that we have our administrative parts of this in

3 proper order.

4          MR. MONTALVO:  That's correct, Your Honor.  We

10:13:07  5 have informed Mr. Garza.

6          THE COURT:  Sure.  So, gentlemen, what's your

7 pleasure?  The government is ready to proceed, and who is

8 representing the government?

9          MR. PEREZ:  The United States is represented by

10:13:15  10 Ruben Perez, Joe Magliolo and Jennie Basile, Your Honor.

11          THE COURT:  All right.  Good morning.  And

12 representing Mr. Duran-Gomez?

13          MR. ODOM:  Good morning, Judge.  Wendell Odem,

14 Neal Davis representing Mr. Duran-Gomez.

10:13:31  15          THE COURT:  All right.  And I think my remarks

16 about representation don't apply to your client; right?

17          MR. ODOM:  That's correct.

18          THE COURT:  What about Mr. Garza -- José Garza?

19          MR. MOSBACKER:  Mervyn Mosbacker and Jerry

10:13:46  20 Montolvo for Mr.  Bolanos-Garza.

21          THE COURT:  And Mr. Fuentes, I believe, is

22 represented by Mr. McGuire, and I gather that his client --

23 is Mr. Fuentes, José Fuentes in the courtroom?  He's not

24 here.  He's apparently not compelled by the proceeding.

10:14:05  25 Okay.  Mr. Hoguin?

1          MR. FRIESELL:  John Friesell for Ms. Hoguin.

2 She's present.

3          THE COURT:  Okay.  And Mr. Mercado?

4          MR. GLEN:  Thomas Glen here for Mr. Mercado.

10:14:22   5          THE COURT:  I believe also from client's

6 perspective is it Mr. Gomez your client?

7          MR. ODOM:  Duran-Gomez, yes, sir, Judge.

8          THE COURT:  Your client is in the courtroom?

9          MR. ODOM:  Yes, he's here, Judge.

10:14:32   10          THE COURT:  And as well, Mr. Mosbacker, is your

11 client present?

12          MR. MOSBACKER:  Yes, Your Honor.

13          THE COURT:  And then let's see.  I believe

14 McGuire and his client are not here.  Mercado, I believe,

10:14:43   15 is out of the state, isn't he, by permission of the

16 Court --

17          MR. GLEN:  That's correct, Your Honor.

18          THE COURT:  -- on condition of employment?

19              And what about your client, Mr. Friesell?

10:14:50   20          MR. FRIESELL:  She's here.

21          THE COURT:  I think I said "he," but I

22 apologize.

23          MR. FRIESELL:  She.

24          THE COURT:  She's present.  Okay.  Very good.

10:14:57   25              And I just wanted to identify them for the

1  record so that we can make sure that whatever concerns, if

2  any, they might have, they can express them to you about

3  any scheduling.

4          So what's our schedule going to look like,

10:15:13  5  Mr. Perez.

6          MR. PEREZ:  Your Honor, we're ready.

7          THE COURT:  You-all are kind of driving the

8  wagon here.

9          MR. PEREZ:  We're ready, but the defense

10:15:20  10  attorneys representing Mr. Duran have filed a motion for

11  continuance, and we certainly are unopposed to that motion.

12          THE COURT:  I saw that, but I'm not sure -- I

13  guess I don't know -- what kind of discovery is out there.

14  We're simply talking about events that occurred on a

10:15:37  15  particular occasion that is really the focus of the

16  indictment itself, as opposed to some historical data, more

17  so; right?

18          MR. PEREZ:  Generally, yes, Your Honor.  But we

19  have provided discovery to the defense attorneys, and there

10:15:52  20  are some prior incidents involving Mr. Duran that we have

21  also provided discovery on.

22          THE COURT:  Okay.  Very good.

23          MR. PEREZ:  We try to be as fast in discovery

24  as we possibly can, Your Honor.

10:16:06  25          THE COURT:  Mr. Odom, do you want to speak?

1          MR. ODOM:  Yes, Judge.  They have given us a

2 great deal of documentation for discovery.

3               I will let the Court know that our efforts

4 up to this point have been primarily dealing with the

10:16:26   5 Department of Justice and their notification.  And while we

6 intend to appeal their decision and we have spent time on

7 that, as I understand it on the issues, we are now, while

8 we've always been somewhat focused on trial, we are now

9 focused on trial.

10:16:43  10          THE COURT:  Okay.

11          MR. ODOM:  And so, it's sort of a different

12 stage for us in the case.  While there's a lot of

13 discovery, it remains difficult for us in trying to find

14 certain people and talk to certain people because of the

10:16:59  15 nature of the fact that so many of them are not citizens,

16 and in trying to -- trying to go through what we need to go

17 through to find the people and talk to the people that we

18 think we would need to get ready to go to trial.

19               We generally talked to the government, and

10:17:19  20 said, "What do you think a target date in the spring of

21 next year?"  March or April would be a realistic date.  And

22 I think that we have a consensus that would be a good

23 target date to shoot for, and let us start now getting

24 ready to go to trial, as opposed to dealing with the

10:17:44  25 administrative decision as to whether or not --

1                    THE COURT:  You said you do intend to appeal?

2                    MR. ODOM:  Well, the -- yes, sir.

3                    THE COURT:  And that's an administrative

4       process within the department, though, is it not?

10:17:53   5                    MR. ODOM:  Right.  And my understanding of

6       this -- and I've never done an appeal from one of these

7       decisions -- my understanding is it doesn't have timetables

8       attached to it as such.

9                    THE COURT:  Meaning they can do something soon,

10:18:08  10       or never, more or less?

11                   MR. ODOM:  Yes.  We don't have 30 days to give

12       notice of appeal, things of that nature.

13                   THE COURT:  And they're not constrained,

14       necessarily.  I don't know.  What constraints are there,

10:18:19  15       once your appeal is in place, or once the notice is in

16       place, are they constrained to get you a response within a

17       certain timeframe?

18                   MR. ODOM:  I have no idea.

19                   THE COURT:  Do know.  Not that you're aware of

10:18:32  20       either, Mr. Perez?

21                   MR. PEREZ:  Not that I'm aware of.

22                   MR. ODOM:  I think the ruling stands until and

23       unless they say otherwise.

24                   THE COURT:  Okay.  And the point of that,

10:18:41  25       obviously, is for me to make sure I have an appreciation

1  for your understanding, and to make sure that as we move

2  forward, the sole and only compelling thing that I have is

3  the trial itself.

4                    MR. ODOM:  Right.

10:18:58  5           THE COURT:  I cannot concern myself with the

6  appellate process.  And I know you know that, but I think

7  that's what I would be concerned about.

8                    Can -- is the evidence against, I gather,

9  that arises out of one or single indictment itself.  This

10:19:18  10  is not -- and what I'm going -- getting ready to go at is,

11  is the -- is there going to be a problem, and what concerns

12  should the Court have about non-capital, let's say,

13  defendants who are going to get dragged along with the

14  defendant who is the subject of a capital indictment?  What

10:19:42  15  concern should I have?  Am I going -- is the evidence going

16  to be the same, irrespective?

17                    MR. PEREZ:  We do think that there will be some

18  defendants, one defendant or maybe more than one defendant

19  who will be brought into the United States.

10:20:00  20           THE COURT:  But if we have one, one defendant

21  that's going to go to trial, the question is whether or

22  not -- I don't mean to create a problem here -- I'm just

23  asking whether or not that defendant can get a fair trial

24  within the trial.  Is there going to be a problem, I guess,

10:20:18  25  is what I'm saying?

```
 1              MR. MAGLIOLO:  I can address that, Your Honor.
 2                  We do not believe there will be, because the
 3  evidence -- there will not be evidence relating to the
 4  defendants who we are not seeking death on that would not
 5  be, we believe, evidence that would be properly submitted
 6  in against the defendant who we are seeking the death
 7  penalty.
 8              THE COURT:  Okay.
 9              MR. MAGLIOLO:  So it shouldn't be a problem.
10              THE COURT:  You can see some distance or
11  separation between the evidence that you might need to put
12  on in one aspect of the case, let's say, against Mr. Gomez,
13  is not necessarily being there for the other, or any other
14  defendant.
15              MR. MAGLIOLO:  Or the death case, it would be
16  the same evidence with additional evidence --
17              THE COURT:  Okay.
18              MR. MAGLIOLO:  -- relating to the deaths.
19                  The three -- three of the defendants are
20  drivers in the case which evidence would go to the
21  smuggling conspiracy, and then two of the defendants are
22  more actively involved.  And it is our belief, but we don't
23  know, that one of those defendants is going to plead
24  guilty.
25                  So we expect, though, as the Court well
```

1  knows, there's no guarantee --

2             THE COURT:  I understand.

3             MR. MAGLIOLO:  -- that this case will come down

4  to a trial against one defendant.

10:21:38   5             THE COURT:  But the evidence in the case in

6  main, in the main, I gather is going to kind of a single

7  fabric of evidence?

8             MR. MAGLIOLO:  Yes, Your Honor.  It will be as

9  to the conspiracy of which the drivers were material in,

10:21:57  10  and then the additional evidence as to the circumstances

11  that surrounded the deaths of the two individuals.

12             THE COURT:  Okay.  That makes it --

13             MR. MAGLIOLO:  May I have add one thing?

14             THE COURT:  -- a little simpler.  It may not

10:22:08  15  necessarily be simple.  Go ahead.

16             MR. MAGLIOLO:  I know the Court has dealt with

17  Mr. Perez and I, and I think Ms. Basile over the years,

18  just so the record is clear, this is going to be an open

19  file case.  We have already worked with the defendants'

10:22:22  20  attorneys in the first portion of this case in providing

21  discovery.  But as to providing access to witnesses,

22  providing whatever we can so that when this case starts,

23  both sides will know the same thing about the case

24  and there's nothing -- we don't expect there's going to be

10:22:40  25  any problems with surprise in this case that we feel this

1  case is such of serious nature that both sides need to know

2  everything as we start this trial.  And that's going to be

3  the prosecution -- I know the defense wants to know -- is

4  going to be the prosecution team's --

10:23:00  5          MR. PEREZ:  Goal.

6          MR. MAGLIOLO:  -- goal to make sure they do

7  know.  So this is not going to be a trial by surprise or

8  ambush.  This is something we're going to go into everybody

9  knowing the facts, we put it on before the jury and let

10:23:14  10  them decide what they need to do.

11          THE COURT:  I see you have a prosecutor in the

12  immigration case as well, against Mr. Garza.  You probably

13  hadn't thought about it recently, Mr. Perez.  But here's my

14  concern:  What is the prospect of this case -- and I'm not

10:23:36  15  sure -- is this case going to have to be tried separately

16  or not?

17          MR. PEREZ:  The illegal reentry, Your Honor?

18          THE COURT:  Yes.

19          MR. MONTALVO:  Your Honor, I don't anticipate a

10:23:48  20  trial in that case.

21          THE COURT:  Okay.

22          MR. MONTALVO:  We're talking towards working

23  out an agreement in that case.

24          THE COURT:  The reason I ask is because once

10:23:56  25  you start into these cases, the question of whether or not

1   the evidence is going to be there, its really not going to

2   be an issue.  I suspect that at some point we'll cross that

3   line and you'll be talking about how he got in the country

4   or how -- I mean, some of that might come in.  Just trying

10:24:11   5   to make sure these weren't going to end up being tried

6   together; or if they were, whether that's proper or

7   improper.  And I think you relieved me of my concern about

8   that.  I think.

9              MR. MONTALVO:  That's correct.

10:24:23   10             THE COURT:  Okay.  Then what we need to do,

11   then, is I guess do two -- well, one thing -- is to grant

12   the continuance that has been requested by Mr. Odom, but

13   also I think I need to require that there be some joint

14   status statements along the way.  I don't want to wake up

10:24:57   15   on April Fool's day and you say, "You know, we haven't

16   really been able to do anything.  We have been sitting

17   around waiting on you, Judge, to tell us what to do."  Not

18   that you would do that.  But the point I'm making is if we

19   had a 60-day status report and that would say, "We're still

10:25:16   20   good on April whatever," or whatever that date is, and then

21   schedule any other dates that you might need if there

22   are -- if there is any need.  And if it's going to be an

23   open file, I gather we are not going to be flooded with a

24   lot of motions and -- or contested type motions, anyway.

10:25:33   25             MR. ODOM:  Judge, hopefully there won't be many

 1  contested issues in regards to discovery.

 2          THE COURT:  Right.

 3          MR. ODOM:  I do anticipate that there's going

 4  to be certainly some motions that should be heard because

 5  of the nature of the case.

 6          THE COURT:  Oh, yes.  I understand that.

 7          MR. ODOM:  Somewhere in the framework, I agree

 8  we need to --

 9          THE COURT:  Are we talking about motions

10  dealing with, for example, dealing with the question of

11  whether or not the defendant can get a fair trial based

12  upon the length of time?

13          MR. ODOM:  Yes, Judge.

14          THE COURT:  I saw something in the file, I

15  believe, in that regard.

16              Then we need to have a date by which those

17  motions should be filed, and then a response date.  And, of

18  course, following that, the question of whether or not I

19  will need some evidence or not on that, or argument only,

20  and hopefully get that resolved.

21              So what is a good date, gentlemen, in April?

22  Is that sort of a consensus date, that April might be a

23  good time, 2013?

24          MR. ODOM:  That's a good date.

25          MR. PEREZ:  That is good for us as well, Your

1  Honor.

2                    MR. ODOM:  My birthday is the 16th, Judge.

3                    THE COURT:  Let's do it on the 16th.  That's

4  the day after the shakedown day, isn't it?

10:26:54   5                    MR. ODOM:  That's right.

6                    THE COURT:  You'll feel light in the pocket.

7  You'll probably be ready to go to trial.

8                    MR. ODOM:  That's right.

9                    THE COURT:  Anything in particular, Diane,

10:27:05  10  sometime in April?  I don't think we planned that far away.

11                    CASE MANAGER:  No, sir.  We have it open.

12                    THE COURT:  I'm planning to take -- I'm taking

13  senior status, as some of you might know, and I plan to

14  take a year off.  So should I start it on April 15th?

10:27:20  15                    MR. PEREZ:  Can we join you?

16                    THE COURT:  Just kidding.  Well, they won't

17  give me a sabbatical if I go off and write my memoirs.

18                    Anyway, let's look at either the -- and I'd

19  like -- generally talked about starting on a Tuesday,

10:27:35  20  rather than a Monday.  So we are looking at April 9th.  We

21  could skip your birthday, if you want to, Mr. Odom.

22  April 9th or 23rd, basically.

23                    MR. ODOM:  Either one.  Whatever the Court's

24  preference.  Obviously not on my docket.

10:27:50  25                    THE COURT:  Let's call it April 9th.  That way

1 we know you'll want to go on vacation after that on the

2 birthday trip after the trial.

3          CASE MANAGER:  Actually, we do have a class

4 certification on April 9th.

10:28:07    5          THE COURT:  I can't believe we planned that far

6 out there.

7               All right.  Then let's say the 23rd.

8 April 23.  And we're going to backup, now, and look at

9 March 25th as the motion cutoff date, let's call it.  We'll

10:28:37   10 then call response date April 8th.  And call it a joint

11 status report March 18th.

12               And I intentionally set it a week before you

13 need to file your motions so you can tell whether or not

14 you really need a different time schedule.  March 18th

10:29:22   15 would be joint status report, government and defense,

16 saying that the date of April 23rd for trial is still a

17 good date, or we need to have certain hearings or motion

18 conferences or whatever.  We can set a schedule notice in

19 that timeframe, after March 18th, if we need to have some

10:29:43   20 hearings and conferences here in court.  All right?

21          MR. ODOM:  Judge, we have one additional

22 request.

23          THE COURT:  Okay.

24          MR. ODOM:  Now that we are gearing up for a

10:29:53   25 fact intensive trial, we would request that the defendant,

1  if possible, be transferred from Joe Corley to FDC Houston

2  so that that can facilitate us being able to prepare to go

3  to trial.  We have a number of tapes that -- not tapes, but

4  a number of transcripts that we need to review with him,

10:30:13    5  and it keeps us from the two-hour drive to get to Corley

6  and back in order to prepare for trial.

7            THE COURT:  I think I could make that request.

8  I'm not sure it can be enforced, but here's what I would

9  suggest as an alternative, and I would look at it this way,

10:30:34   10  that at the very least we need to have him --

11            MR. ODOM:  Federal Detention Center.

12            THE COURT:  -- detention center, have him there

13  for blocks of time over the next 90 days, like two or three

14  weeks, at least, every other month, at whatever times they

10:30:54   15  can make him available to you.  That would -- that would

16  get you through November, December, January and February

17  perhaps at least 60 days if there is a housing problem,

18  they should be able to hold him there for 30 days and maybe

19  send him back or whatever.

10:31:11   20            So I need to find -- we'll find out if I

21  need to enter some kind of order to that effect.  I would

22  like for this to be -- let me find out how I should

23  approach it before I enter an order and before I ask you to

24  write a letter or anything of that sort.  It may require a

10:31:35   25  motion, formal motion, that he be made available starting

1 some particular date.  If so, Diane can probably get you

2 that information within the next couple of weeks, or less.

3                    MR. ODOM:  Thank you.

4                    THE COURT:  Anything else, gentlemen?

10:31:52    5                    MR. PEREZ:  We do have one other issue, Your

6 Honor.

7                    MR. MAGLIOLO:  Your Honor --

8                    MR. MONTALVO:  -- before, if I can just bring

9 this up, Your Honor?

10:31:58   10                    THE COURT:  Yes.

11                    MR. MONTALVO:  Regarding 07-275,

12 Mr. Bolanos-Garza case.

13                    THE COURT:  Right.

14                    MR. MONTALVO:  Can I just ask the Court that

10:32:06   15 the scheduling order for that case just follow the

16 scheduling order, or if the Court -- I could file a motion

17 if the Court would like.

18                    THE COURT:  I think a formal motion would be

19 better.  And what you're simply asking, if I understand it,

10:32:21   20 is that the scheduling order that is put in place in this

21 case -- this case being 10-459 -- be incorporated, or at

22 least also filed in the 07-275 case.

23                    MR. MONTALVO:  Thank you, Your Honor.

24                    THE COURT:  I don't see a problem with that,

10:32:41   25 unless Mr. Perez sees a problem with it.

1           MR. PEREZ:  We don't have a problem.

2           THE COURT:  It's just a tracking situation.

3  Since he's going to be here on some of those days, you can

4  certainly be here as well.

10:32:49   5           Yes, sir, Mr. Magliolo?

6           MR. MAGLIOLO:  There's another issue, Your

7  Honor, relating to Mr. Montolvo's earlier representing some

8  material witnesses in this -- the initial stage of this

9  case.

10:33:02   10           THE COURT:  "This case" being the 10-459

11  currently talking about now in this court?

12           MR. MAGLIOLO:  Yes, Your Honor.

13           THE COURT:  And that would not, as I

14  understand, or are you asking him would that impact him

10:33:13   15  representing Mr. Gomez -- I mean Mr. Garza in the

16  immigration case?

17           MR. MAGLIOLO:  Yes, the immigration and his

18  prior, up to this point, reputation of him in the case that

19  would eventually go to trial.

10:33:30   20           MR. PEREZ:  The 10-459.

21           MR. MOSBACKER:  Your Honor, I think they're

22  speaking of the current case, not the reentry.  I don't

23  think it impacts at all.

24           THE COURT:  He's out of this case.  He's going

10:33:40   25  to be out of this case effective October 4th, I believe, is

1  the date that the Department of Justice came down with its

2  ruling.

3           So on a going forward basis, he would only

4  be representing Mr. Garza in the illegal reentry case?  Are

10:34:05  5  you questioning whether or not there's some

6  cross-pollination with him continuing in that case?

7           MR. MAGLIOLO:  It's my understanding that I

8  think Mr. Garza has been made aware of this, and just

9  because we expect this case to be scrutinized as much as

10:34:16  10  any case could possibly be, I guess we just want it clear

11  in the record so when the people that scrutinize this case

12  do, then it will be clear exactly as to Mr. Garza's

13  position.

14           THE COURT:  Then we might need to make that

10:34:31  15  clear by running a separate scheduling order, period.  That

16  separates you out of this case.

17           MR. MONTALVO:  Your Honor, I think -- if I may?

18  I think the government wants first -- first of all, the

19  other parties are aware of discovery, and I think we wanted

10:34:49  20  to make the Court aware of it.  Apparently --

21           THE COURT:  No.  I have the docket sheet.

22           MR. MONTALVO -- four or five years ago, I was

23  appointed to represent some material witnesses.

24           THE COURT:  I understand.  I think they are

10:35:00  25  concerned, though, is that some of those material

1  witnesses -- is it your concern that some of those

2  witnesses may be witnesses in this case?

3                    MR. PEREZ:  In 10-459, yes, Your Honor.

4                    MR. MOSBACKER:  Your Honor --

10:35:16  5          MR. MONTALVO:  And I have discussed that with

6  Mr. Bolanos, and I have fully made, with Mr. Mosbacker

7  present, we have fully made him aware of this, and he's in

8  agreement.  He has stated to both of us that he does not

9  feel that there is a conflict where he doesn't -- and if

10:35:35  10  there is, he is willing to waive the conflict.

11                   THE COURT:  Well, if there is or was a

12  conflict, as it relates to this case, then certainly that

13  severance is going to cure some of that, potentially.

14                   The question is whether or not there's a

10:35:52  15  conflict now with you representing him in the illegal

16  reentry case, which probably is an unrelated matter to

17  those on that you represented -- when I say unrelated -- I

18  suspect that when you represented some of the other aliens

19  early on, that they were not in relationship to his illegal

10:36:22  20  reentry case.

21                   MR. MONTALVO:  That's correct, Your Honor.  And

22  none of those witnesses would be called to testify against

23  Mr. Bolanos in his illegal reentry case, or at least I

24  don't think.

10:36:33  25          THE COURT:  All right.  Here's the other

1  concern, then, that the government might have, and that I

2  would certainly want to make sure of, and that is that,

3  assuming that to be true, what is your duty now, as it

4  relates to involvement with Mr. Mosbacker?  Is your duty

10:36:53  5  now to make sure that you never, in this lifetime, talking

6  about this case again.

7           See, because if he goes to trial -- let's

8  assume that he goes to trial -- and you're sitting in the

9  back room, it's your client but it ain't your client, in

10:37:11  10  the courtroom, in a true sense of the word because he's

11  going to trial on a different case.  While you certainly

12  could sit there and watch and see what is going on, the

13  question is, what is your relationship going to be with

14  your client that will not -- so that it does not interfere

10:37:28  15  with, or seem as though it's supportive of some theory or

16  fact that Mr. Mosbacker would not, and should not be

17  involved with you about?  If you understand what I mean?

18  Are you following me?

19           MR. MONTALVO:  I think so, Your Honor.

10:37:49  20           THE COURT:  As soon as he gets through talking

21  to his client at the end of the day, you go over and you

22  talk to them, or you sit there and talk to them at the same

23  time, and you're listening to what they're talking about in

24  their case, which is not a problem, as far as you and your

10:38:00  25  client are concerned.  It might be a problem, as far as the

1  government is concerned -- not that I know of anything or

2  that you know of anything -- but the question is what kind

3  of conversations can you with your client, or can

4  Mr. Mosbacher have with his client in front of you?

10:38:17  5          MR. MONTALVO:  Your Honor, whatever information

6  I have obtained from my client, Mr. Bolanos, and

7  Mr. Mosbacher has obtained from his client, Mr. Bolanos, I

8  don't believe any of that information would conflict any --

9  either part of this representation.

10:38:33  10         I think the issue that the government --

11  that the government may have had, or I don't have an issue,

12  is that the material witness may have said something

13  perhaps against Mr. Bolanos.  I don't know that to be true.

14         THE COURT:  Let's assume that they did.  Let's

10:38:57  15  assume that you represented some people that the government

16  now know to be material witnesses, and they have implicated

17  your client in this case -- let's say that's true -- you

18  represented them perhaps in a different case, or a

19  different fashion, or they were here for whatever reason,

10:39:17  20  you were working through the immigration issue.  But they

21  are not in this case, but in their conversations they

22  discuss with the government people that they knew, and your

23  client's name came up.  Now, I don't know that that's an

24  automatic problem, but I would be concerned about your

10:39:38  25  client, once he sees who these people are, coming to you

1  about that.

2              MR. MOSBACKER:  Your Honor, I think we can

3  resolve it.  If Mr. Montolvo remains on the reentry case

4  and I remain on this case, we can have an agreement that we

10:39:56   5  will not communicate concerning this case.

6              THE COURT:  What kind of agreement do we need

7  from them to put up this wall that you believe is

8  necessary?  And I gather from time to time, if the case,

9  during the course of the trial, develops some facts, you

10:40:12  10  certainly have to then bring it to our attention that

11  there's a conflict or problem arising for real, as opposed

12  to thinking it might arise?

13              MR. PEREZ:  May I ask a question, Your Honor?

14              THE COURT:  Sure.

10:40:26  15              MR. PEREZ:  Let's suppose Mr. Bolanos-Garza

16  pleads guilty.

17              THE COURT:  Okay.

18              MR. PEREZ:  And let's suppose that Mr. Montalvo

19  no longer, effective October 4th, he no longer represents

10:40:37  20  Mr. Bolanos-Garza --

21              THE COURT:  Okay.

22              MR. PEREZ:  -- would that help the Court or

23  help with --

24              THE COURT:  Well, I don't know that it bothers

10:40:43  25  me one way or the other.

1         Here's -- I think that once I say and enter

2    an order putting him out of this much case, that separates

3    him from further representation in this case.  My only

4    concern, primarily, is the relationship that he might have

10:41:00  5    with Mr. Mosbacker and his client in a case that he's not

6    representing him on anymore, that's creating a problem for

7    himself and/or his client later on when the witnesses

8    starts showing up.

9         Now, the witnesses start showing up and

10:41:17  10   they're not showing up in the illegal reentry case, but

11   they show up and they are people that you had impact,

12   influence with, and you're sitting in the back of the

13   courtroom and they're looking at you and they say, "That

14   guy sure looks familiar to me.  I think he used to

10:41:36  15   represent me.  Can I ask him a couple of questions?"  I'm

16   not suggesting that's going to happen.

17        The question is, when he starts testifying

18   against your former client, is that a problem?  I don't

19   think it is, from the point of view that he's not to then

10:41:49  20   go to Mr. -- that's why I said as between Mosbacker and

21   Montolvo, there has to be a wall, at least, when that

22   occurs.  Number one.  And then number two, it really has to

23   be a situation where he cannot have a conversation with his

24   client while he's representing him in the -- in the -- in

10:42:13  25   the immigration case about something that's going on in

 1  this conspiracy case, because that's not attorney-client

 2  relationship anymore in this case.

 3               Attorney-client relationship is specific.

 4  It's relating to the old case, the '07 case.  And neither

10:42:40  5  attorney should meet, in other words, after he's out of the

 6  case.

 7               MR. MAGLIOLO:  So I can understand, it's my

 8  understanding both counsel are aware of Mr. Montalvo,

 9  Mr. Mosbacher, both aware of this situation, and they have

10:42:53  10  counseled with their client?

11               THE COURT:  Their client.

12               MR. MAGLIOLO:  When he was their client on both

13  cases about this?  If we could get their client to be put

14  on the record that he understands what we're talking about,

10:43:05  15  and if there is any kind of conflict, he waives it, would

16  be the first thing I would ask for.

17               THE COURT:  I'm not sure we understand it, but

18  we can sure ask him.

19               MR. MAGLIOLO:  So that would at least be in the

10:43:16  20  record --

21               THE COURT:  Absolutely.

22               MR. MAGLIOLO:  -- for the reviewers that are

23  going to look at this in the future.

24               MR. MONTALVO:  I agree, Your Honor.

10:43:23  25               MR. MAGLIOLO:  And, secondly, Your Honor, we

1 would ask Mr. Duran's counsel to, if they could put

2 something in the record where at least at this time, if

3 they see any issues or problems with this situation

4 relating to Mr. Duran so if there is something they see or

10:43:45   5 if there's something comes up in the future, we'd like to

6 know so we can address those issues.

7           THE COURT:  You agree with that, Mr. Odom, that

8 if you see something on the horizon, that you have a duty,

9 obviously, to step up and bring it the Court's attention?

10:44:01   10          MR. ODOM:  That's just what we were discussing,

11 trying to figure out which witness he did represent.  And

12 we did know previously.  We're just trying to rack our

13 brains trying to figure it out.  At this point we know of

14 no conflict, but we would like -- we will go and review our

10:44:16   15 files and notes and if we do see any, we will let the Court

16 know.

17          THE COURT:  Well, and the point is, I don't

18 know to what extent you-all have pollinated,

19 cross-pollinated on the facts and strategies -- let's call

10:44:29   20 it -- in advance of now, but all of that may be common

21 among certain of you, because I believe the -- your two

22 clients were the ones who were being considered.

23          MR. ODOM:  Right.

24          MR. MOSBACKER:  Correct.

10:44:41   25          THE COURT:  And to the extent that there's a

1  cross-pollination, and you have this former client come up,

2  it can certainly still come up, at least theoretically,

3  before your client, Mr. Odom.  So I think that's what I'm

4  asking.

10:44:53   5          MR. ODOM:  Right.  And there has been very

6  little coordination between us and Mr. Mosbacher and

7  Mr. Montolvo at this point.  So I don't think that's a

8  problem.

9          THE COURT:  Okay.

10:45:01  10          MR. ODOM:  But we do -- we are going to go back

11  to the office and get our notes and check out whether we

12  think there's a problem.

13          THE COURT:  Sure.

14          MR. MAGLIOLO:  Another thing, I think the Court

10:45:20  15  has said Mr. Montalvo is officially off the conspiracy case

16  and now representing on his initial case.

17          THE COURT:  Yes.  He's his pro bono.

18          MR. MONTALVO:  Your Honor, we did discuss the

19  case as well.

10:45:38  20          THE COURT:  We needed -- I want -- he's here

21  today on this '07 case, because I needed to bring that in

22  in a way to figure out if they were going to be tried

23  together, or, you know, in other words, it's an hour of

24  testimony one way or the other or whether or not he was

10:45:55  25  going to be.  And I think if that were the case, there

1  might certainly be some concern.

2          MR. MAGLIOLO:  Then the only thing left, I

3  think, is for their client to tell the Court it's his

4  personal position on this matter.

10:46:04  5          THE COURT:  Sure.

6          MR. MONTALVO:  May we bring him up?

7          THE COURT:  Sure.  Mr. Duran -- I'm sorry.

8  Mr. Bolanos.  I apologize.  Good morning, sir.

9          DEFENDANT BOLANOS-GARZA:  Good morning.

10:46:28  10          THE COURT:  What is your name?

11          DEFENDANT BOLANOS-GARZA:  Jose Alberto

12  Bolanos-Garza.

13          THE COURT:  Mr. Bolanos, you probably have

14  tried to follow our discussion here this morning as we were

10:46:37  15  talking about this issue of a conflict of interest that

16  could or may arise, may not, in the context of the trial of

17  this case.  This case being the 10-459, conspiracy to

18  transport.  And you probably heard us discuss how one of

19  your attorneys, Mr. Montalvo, had represented -- what do we

10:47:11  20  want on call them -- what's the proper name?

21          MR. MONTALVO:  Material witnesses.

22          THE COURT:  Material witnesses that are not

23  indicted in this case, and perhaps are not indicted in any

24  case, but who may have given information to the government

10:47:26  25  during the course of an investigation.  He might have very

1 well represented some of those people, and those folk may

2 have had something to say that would implicate one or more

3 persons in this case.  We don't know.  At least I don't

4 know at this point.

10:47:46  5             So here's the concern.  The concern is

6 whether or not you have a problem at this time with

7 Mr. Montalvo going forward, having represented you in the

8 past, as now having a conflict, now that this matter has

9 been brought to your attention, conflict of interest.  Is

10:48:10 10 there any problem that you see with the past representation

11 of Mr. Montalvo, representation of yourself by him, and the

12 fact that you are going forward now without him and only

13 Mr. Mosbacker?  And I said that in a convoluted way, but

14 I'm trying to find out if you see any problem with his past

10:48:33 15 representation?

16             DEFENDANT BOLANOS-GARZA:  No.

17             THE COURT:  He is continuing to represent you,

18 and the question is should he continue to represent you in

19 your 2007-275 case where you are charged by indictment with

10:48:57 20 the offense of illegal reentry.  You know he is

21 representing you in that case?

22             DEFENDANT BOLANOS-GARZA:  Yes.

23             THE COURT:  Do you see or believe that there is

24 any conflict of interest in his continuing to represent you

10:49:15 25 in that case?

1           MR. MONTALVO:  I don't think so.

2           THE COURT:  If it came to your attention, or if

3 you believed that it did, would you bring that to my

4 attention, as well as to his attention, at the earliest

10:49:28   5 possible time?

6           DEFENDANT BOLANOS-GARZA:  Yes.

7           THE COURT:  And it can arise in a situation

8 where, for example, some witness shows up on the witness

9 stand during the course of the trial in this case that will

10:49:46  10 be testifying about facts that might impact you.  And at

11 the time, that is, several months or several years ago,

12 Mr. Montalvo stood and represented them in some other way.

13 That's how it could come up.  Do you understand that?

14           DEFENDANT BOLANOS-GARZA:  Yes, I understand.

10:50:11  15           THE COURT:  All right.  With that

16 understanding, then, I want to make sure that you

17 understand you have an obligation to say something to your

18 attorney in this case, or say something to Mr. Montolvo in

19 your '07 case and bring it to the Court's attention if that

10:50:31  20 issue comes up and you're concerned about him having

21 represented someone else in the past that might have some

22 say so in this case.  Do you understand that?

23           DEFENDANT BOLANOS-GARZA:  Yes, I understand.

24           THE COURT:  So at this point in time, you have

10:50:46  25 no concern about any conflict, and if so, you waive that

1  conflict; is that right?

2           DEFENDANT BOLANOS-GARZA:  I don't think there's

3  a problem.

4           THE COURT:  But I don't want to know whether or

10:51:00  5  not if there is any conflict that you even see or that

6  somebody else might see, you're waiving it at this time,

7  but you can bring it up to me later if you think it becomes

8  a problem.

9           DEFENDANT BOLANOS-GARZA:  Yes, I will tell you.

10:51:14  10          THE COURT:  All right.  Very good.  Anything

11  else, gentlemen?

12          MR. MONTALVO:  No, Your Honor.

13          MR. MOSBACKER:  No, Your Honor.

14          MR. MAGLIOLO:  No, Your Honor.

10:51:23  15          THE COURT:  All right.  Thank you.  Will there

16  be any concern that the record -- Mr. Montalvo had asked

17  that the scheduling order in the two cases run together

18  simultaneously, or the same order it directs both cases.

19  Is that going to be a problem?

10:51:41  20          MR. MAGLIOLO:  Not with the United States, Your

21  Honor.  I think, you know, if they're together or a few

22  days apart, I don't see how that would be make any

23  difference.  So not from the United States.

24          THE COURT:  Well, they're not going to be

10:51:50  25  tried, assuming that they go to trial, the same day anyway.

1 But the point is that they would just be simply show up

2 days if there are -- if there's a basis for a show up.

3          MR. MONTALVO:  Your Honor, I was just thinking

4 of the expense the Marshal is going to have to bring them

10:52:08   5 on another day, or having other court setting.  I think

6 this case will probably resolve, be resolved somehow in the

7 future together.  I don't know that for a fact.  But I just

8 think if the Court would run them, we would save resources.

9          THE COURT:  Yes.  I don't have a problem

10:52:29  10 whether they're both assigned to me.  I just want to make

11 sure that when people look at records, they don't see what

12 people who are handling those records and making those

13 records see during the course of their proceeding.  I just

14 want to make sure that six months, 10 months from now,

10:52:44  15 somebody looks back and says, "These guys were all working

16 together," and certainly we are.  That's our job.  But not

17 to any ill to the defendant, though.  We're just trying to

18 make sure the record is clear.

19          MR. PEREZ:  We certainly have no problem with

10:53:00  20 that, Your Honor.

21          THE COURT:  Okay.  Good.

22          MR. MONTALVO:  Alternatively, the government

23 could to dismiss the case today.

24          THE COURT:  I'm sure you-all will get deeply

10:53:08  25 into that conversation as soon as we're done here.

1              Anything else, gentlemen.

2              MR. PEREZ:  No, Your Honor.

3              MR. MOSBACKER:  No, Your Honor.

4              THE COURT:  All right.  Thank you very much,

10:53:14   5  and you're excused.  Except I need to speak to

6  Mr. Montalvo, Mr. Mosbacker, I believe the two of you, on

7  the administrative side of matters, so that we have a

8  clear, going forward understanding.

9              All right.  I've said a couple of things,

10:53:37  10  but I need to ask you some things about some records as

11  well.

12             Thank you, gentlemen and lady.  You may be

13  excused.

14             MR. PEREZ:  Thank you, Your Honor.

10:53:43  15             THE COURT:  By the way, I didn't hear anything

16  from some of you, so have I disrespected you in any way?

17             MR. GLENN:  No, sir.

18             MR. FRIESELL:  No, Your Honor.

19             THE COURT:  If the two of you would approach

10:54:00  20  the bench and come around here we can stay on the record

21  without having to leave out, and that will help me to speak

22  to these issues.

23             **(The following was held at sidebar)** ▮

24       ███████████████████████████████████████████████

10:54:25  25  ███████████████████████████████████████







10:57:42

10:58:08

10:58:18

10:58:24  20    **(The following was held in open court)**

21         MR. PEREZ:  May I have a moment, Your Honor?

22  Separate and apart?  Talk to Mr. Mosbacker just two

23  seconds?

24         THE COURT:  I'm done.

10:58:37  25         MR. PEREZ:  But we --

1           THE COURT:  You want me to stay and watch?

2           MR. PEREZ:  Yes, sir.

3           THE COURT:  I'm just kidding.

4           MR. PEREZ:  Approach the bench, Your Honor?

10:59:28    5           **(The following was held at sidebar)**

6           MR. MOSBACKER:

7

8

9

10:59:42    10

11

12

13

14

10:59:52    15

16

17

18

19

11:00:05    20

21

22

23

24

11:00:16    25







*Johnny C. Sanchez, RMR, CRR - jcscourtreporter@aol.com*







11:06:01

**(Recessed at 11:06 a.m.)**

**COURT REPORTER'S CERTIFICATE**

I, Johnny C. Sanchez, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/_____
Johnny C. Sanchez, CRR, RMR