UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | |
| | § | CRIMINAL NO. H-10-459-SS |
| | § | |
| WILMAR RENE DURAN-GOMEZ | § | |
| aka "El Gordo," aka "Junior," aka | § | |
| "Oscar," aka "Carnalito" | § | |

## GOVERNMENT'S  RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS THE FRUITS OF ILLEGAL ARREST

To the HONORABLE JUDGE HOYT:

Now comes the United States of America, by and through Ryan Patrick, United States Attorney and Lisa M. Collins and Jill J. Stotts, Assistant United States Attorneys for the Southern District of Texas, and Barry K. Disney, Trial Attorney with the Capital Case Section,  in the above-entitled numbered criminal action, and files this response to Defendant's Motion to Suppress the Fruits of Illegal Arrest (Docket No. 504).  For the following reasons, the motion should be denied in its entirety.

## I.    SUMMARY

The defendant's motion should be denied.  The warrantless arrest of the defendant was lawful because the I.C.E. agent had both knowledge the defendant was in the United States in violation of the law and probable cause to believe that he

was likely to escape before a warrant could be obtained.  Further, even if it is determined that the agent's belief of escape risk was unreasonable, the arrest did not violate the defendant's constitutional rights under the Fourth Amendment because there was probable cause to believe the defendant had committed a felony. Therefore, applying a suppression remedy for a purely statutory violation is unwarranted.

## II.    FACTS

1. At approximately 6:10 a.m. on November 15, 2006, law enforcement officers discovered a stolen Ford F-350 pickup truck with two deceased males in sleeping bags inside.  The presence of gas containers, rags, and the smell of gas led officers to believe that an attempt had been made to burn the truck.  (Bate 24166, 24170).

2. The deceased males were nude.  One male's hands were bound and the second appeared to have been bound at some point. Both men appeared had been severely beaten and had their hair cut very short.  (Bate 24171).  Because the victims each appeared to be Hispanic, very small, and malnourished, investigators inspecting the scene believed the victims had recently entered the United States from Mexico or South America.  (Bates 24178).  This belief was reinforced by Honduran identification cards found near the body of one of the victims. (Bates 24171).

3. Autopsies performed on the victims on November 15th and 16th, 2006 revealed the victims had died from blunt force trauma with at least four different objects being used to inflict injury. The injuries were located mostly on the victim's backs and legs. (Bates 24179).

4. On November 20, 2006 a confidential informant ("C.I."), known to law enforcement and previously having provided reliable information, contacted I.C.E. agents and identified Wilmar Duran as the person responsible for the beating and death of the two victims and the subsequent disposal of their bodies. (Bate 11025). The C.I. identified Duran as the operator of a company that smuggled aliens throughout the United States and gave the location of the company near Bellaire and Hillcroft in Houston, Texas. The C.I. identified the victims as Honduran nationals who had recently been smuggled into the United States that were being held by Duran until smuggling fees were paid. The C.I. explained that the men had caused trouble for Duran by trying to escape the warehouse and were having difficulty coming up with the fees. The C.I. stated that the victims had been beaten with a golf club, that their bodies had been taken to the location in a stolen pickup truck, and an attempt had been made to set the truck on fire with a gas can having been left at the scene. The C.I. stated that Duran was extremely nervous because of a belief his vehicle may have been captured by a traffic camera. (Bates 11025-26, 28958).

5. On November 20, 2006, law enforcement researched Wilmar Duran's name and discovered he had connections to a business in the 7300 block of Ashcroft Dr. (Bates 28968).

6. On November 20, 2006, law enforcement officers began surveillance of Duran-Gomez.  (Bates 28967).

7. On November 21, 2006 law enforcement learned of a call for service placed to the Houston police department on November 14, 2006 in which the caller described 5 nude men being beaten at 7315 Ashcroft, Houston, Texas.  With this information law enforcement were able to locate members of the Castellon family.  Through interviews with the Castellon family, law enforcement learned that smuggled aliens were held hostage and beaten at a warehouse located at 7315 Ashcroft.  The Castellon family also informed officers that one of the men had previously tried to escape by setting a fire.

8. Law enforcement began preparing a search of 7315 Ashcroft #116.  At 8:50 p.m. on November 21, 2006 a search warrant was signed for 7315 Ashcroft #116.   The search commenced at 9:15 p.m. with officers making forced entry into the building.  (Bates 24184).

9. After Duran had been identified as a suspect in the murders, I.C.E. agents had begun surveillance on him.  Shortly before the execution of the search warrant, at approximately 6:20 p.m. on November 21, 2006, the defendant, Wilmar

Duran, was arrested by I.C.E. agents as he left his home and was walking to his vehicle. (28976). The arresting officers were aware that a search warrant was soon to be executed at 7315 Ashcroft #16.  Through prior research the arresting officers knew that Duran was not a United States Citizen and had a prior conviction for which he was deportable.  The agents also held the belief that if Duran was not then arrested, he was likely to escape.

### III.   LEGAL AUTHORTIY AND ARGUMENT

*Immigration arrest of Duran was proper*

The arrest of the defendant was legal.  8 U.S.C. § 1357 (a) (2) allows an I.C.E. agent to arrest an alien without a warrant if the agent has a "reason to believe" the alien is in the United States in violation of law and is likely to escape before a warrant can be obtained.  The phrase "reasonable grounds" is equivalent to probable cause.  *United States v. Varkonyi,* 645 F.2d 453, 458 (5th Cir. 1981).

At the time of his arrest, the arresting agent knew that Duran was in the United States in violation of law due to his prior convictions.  The agent also knew that Duran's warehouse would shortly be searched.  Once the search of the warehouse started, Duran would become aware of the law enforcement investigation into his activities.  Given the information the agent held concerning Duran's involvement in the murders, the belief that Duran would flee once he discovered that he was a suspect in the murders was a reasonable.

*Agent had probable cause to arrest for crimes relating to the murder*

8 U.S.C. § 1357 (a) (5) allows an I.C.E. agent to arrest any person for a felony if the agent has reasonable grounds to believe the person arrested has committed the felony and if there is a likelihood of the person escaping before a warrant can be obtained.  The subjective intent of the arresting officer is not a basis for invalidating an arrest.  There is no requirement that the offense establishing probable cause must be related to or based on the same conduct as, the offense identified by the arresting officer at the time of the arrest.  *Devenpeck v. Alford,* 543 U.S. 146, 153, 125 S. Ct. 588, 160 L. Ed 2d 537 (2004).  Therefore, it is immaterial that the arresting officer made a warrantless arrest for an immigration violation as long as the officer had probable cause to also make an arrest for a felony offense.

Defense argues that because prosecutors were not ready to indict the cases, probable cause could not have existed.  However, defense conflates the issue of probable cause- an issue solely for the Court- and whether or not a prosecutor is ready to indict.   In U.S. v. Lovasco, 431 U.S 783 (1977) the Court held that "It is obvious that prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt. No one's interests would be well served by

compelling prosecutors to initiate prosecutions as soon as they are legally entitled to do so."

At the time of Duran's arrest, law enforcement had a credible CI who stated that Duran was involved in two separate felonies- Human Smuggling and Murder. That CI's information was corroborated by the physical evidence at the scene, as well as, the statement given by Castellon Paz concerning what he witnessed at the warehouse.   Duran was identified as a human smuggler and participant in the deaths of the two decedents.  His name was attached to the location where the murders took place and his characteristics were consistent with "the Boss" who ran the smuggling operation at the location.  The decedents were identified as having been beaten at that same location consistent with the injuries viewed in the autopsy and resulting in death.  This was more than enough evidence to establish probable cause for Duran's arrest.

*Exclusion improper absent a constitutional violation.*

"Although exclusion is the proper remedy for some violations of the Fourth Amendment, there is no exclusionary rule generally applicable to statutory violations.  Rather, the exclusionary rule is an appropriate sanction for a statutory violation only where the statute specifically provides for suppression as a remedy or the statutory violation implicates underlying constitution rights such as the right to be free from unreasonable search and seizure."  *United States v. Abdi,* 463 F.2d

547 (6th cir., 2006) (refusing to apply exclusionary rule where Immigration agent had probable cause to arrest but no reasonable belief that escape was present: "it is clear that nothing in the text of 8 U.S.C. § 1357 provides an independent statutory remedy of suppression for failing to obtain an administrative warrant.")  A warrantless arrest by a law officer is reasonable under the Fourth Amendment where the arrest is in public and there is probable cause to believe that a criminal offense has been or is being committed.  *Id* citing *United States v. Watson*, 423 U.S. 411, 417-24, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976).  To determine whether an officer had probable cause to arrest an individual, a court examines the events leading up to the arrest, and then decides "whether these historical facts, viewed from the standpoint of an objectively reasonable…officer, amount to "probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003).

## IV.    <u>CONCLUSION</u>

Based on the foregoing circumstances, the Government respectfully requests the Court deny the Defendant's motion to suppress in its entirety.


Respectfully submitted,

RYAN K. PATRICK
United States Attorney


___/s/_ *Lisa M. Collins*
Lisa M. Collins
Assistant United States Attorney
Texas Bar No. 24054166
1000 Louisiana St. Ste. 2300
Houston, Texas 77002
Phone: 713-567-9000

___/s/_ *Jill J. Stotts*
Jill J. Stotts
Assistant United States Attorney
Texas Bar No. 24036841
1000 Louisiana St. Ste. 2300
Houston, Texas 77002
Phone: 713-567-9000

___/s/_ *Barry K. Disney*
Barry K. Disney
Trial Attorney,
Capital Case Section

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 6, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and sent same by electronic means to counsel of record for the defendant.

__/s/_*Lisa M. Collins*_____
Lisa M. Collins
Assistant United States Attorney