United States District Court
for the Southern District of Texas
Houston Division

| | | |
|---|---|---|
| **United States of America** | § | |
| | § | |
| v. | § | **Criminal No. H-10-459** |
| | § | |
| **Wilmar Rene Duran Gomez** | § | **[Capital Case]** |

\* \* \* \* \* \* \* \* \* \* \* \*

**Defendant Duran Gomez's Motion to Strike Death Notice Because
<u>Government's Evidence and Allegations Negate Statutory Eligibility Factors</u>**

Defendant Wilmar Rene Duran Gomez, by undersigned counsel, respectfully moves the Court to strike the government's amended notice of intent to seek the death penalty (ECF No. 523). For Mr. Duran Gomez even to be considered for a death sentence, the Federal Death Penalty Act, 18 U.S.C. § 3591(a)(2), requires the government to prove at least one eligibility factor involving his mental state and causal role in the killings. But the government's evidence and, indeed, its own allegations, affirmatively negate each of the three factors charged here. That is because each statutory intent factor requires the government to prove that Mr. Duran Gomez's own, personal actions constituted a but-for cause of the victims' deaths. Yet the government's theory of the case—as articulated in its informative outline—is that the victims died from the various beatings inflicted on them over the course of a week by three different assailants, one of which was allegedly Mr. Duran Gomez. The government has expressly disavowed being able to establish any more about which beating or which assailant caused the victims' deaths.

1

I.  **The government alleges that the victims' deaths were caused by beatings they suffered from three different assailants over the course of a week, rather than by Mr. Duran Gomez's own, individual acts.**

Mr. Duran Gomez faces a second superseding indictment charging him and codefendant Efrain Rodriguez-Mendoza with harboring illegal aliens (Counts 2 and 3) and conspiring to do so (Count 1), in violation of 8 U.S.C. § 1324; kidnapping (Counts 4 and 5), in violation of 18 U.S.C. § 1201; and hostage taking (Counts 6 and 7), in violation of 18 U.S.C. § 1203.[1] ECF No. 314. Each of the six substantive charges (Counts 2-7) also alleges that the offense resulted in the deaths of two of the aliens, Abelardo Sagastume and Hector LNU. ECF No. 314 at 7-12. By statute, each substantive offense is potentially punishable by death. And the government has filed a notice of its intent to seek a death sentence should Mr. Duran Gomez be convicted. ECF No. 523.

The indictment and the government's "informative outline" of the facts it intends to prove, ECF No. 529, allege that, in November 2006, Mr. Duran Gomez, along with Mr. Rodriguez-Mendoza, smuggled aliens into the United States and concealed them at a warehouse in Houston, where they were held pending receipt of payment from their friends or family. The government further alleges that one or more of the aliens deliberately set a fire in the warehouse in an unsuccessful attempt to escape, after which Mr. Duran Gomez, Mr. Rodriguez-Mendoza, and another accomplice (and defendant in a companion case), Jose Bolanos-Garza, allegedly beat the aliens in an effort to identify the culprits. The government alleges the three men then inflicted further beatings on the aliens over the ensuing week. It

---

[1] Because the indictment uses the statutory term "aliens," 8 U.S.C. § 1324, Mr. Duran Gomez also uses it in this motion.

alleges some of the acts of violence came at the hand of Mr. Duran Gomez, but that others were inflicted by Mr. Rodriguez-Mendoza or by Mr. Bolanos-Garza individually. Still others, it attributes only to some combination of the three, or to no one at all. Ultimately, two of the aliens, Mr. Sagastume and Hector LNU, allegedly died as a result of the beatings. ECF No. 314 at 3-7; ECF No. 529 at 2-15.

According to the government's forensic evidence produced thus far in discovery, including the autopsy reports, neither victim's death can be traced to any particular injury or injuries, let alone to ones allegedly inflicted by Mr. Duran Gomez. And the government's main cooperating witness, Mr. Bolanos-Garza, swore in his plea agreement that Mr. Rodriguez-Mendoza alone was the last one in the room assaulting each victim before that victim died. ECF No. 274 at 9. Thus, the government has represented to the court that it will "prove that both Rodriguez Mendoza and Duran Gomez, along with Bolanos Garza, . . . beat and tortured" the victims "to death over the course of seven days. The evidence will show that there was no 'single shot' that resulted in the deaths—rather, the defendants bound, beat, choked, burned, and struck their victims with objects until they died." ECF No. 409 at 14.

**II.     But Mr. Duran Gomez is not statutorily eligible for a death sentence unless his own individual acts constituted an "actual cause" of the victim's death—in other words, unless the victim would not have died but for those acts.**

Prior to the enactment of the FDPA, the Supreme Court recognized that, in homicides involving accomplices or multiple principals, the Eighth Amendment forbids a death sentence unless the defendant himself personally engaged in certain conduct and did so with a certain mens rea. If those conditions do not exist, it is no substitute that established trial rules of vicarious liability treat all the defendants as equally guilty of the homicide offense. *Tison v. Arizona*, 481 U.S. 137 (1987); *Enmund v. Florida*, 458 U.S. 782 (1982). As the

3

Court explained: "The question before us is . . . the validity of capital punishment for [the defendant's] own conduct. The focus must be on his culpability, not on that of [his co-perpetrators], for we insist on 'individualized consideration as a constitutional requirement in imposing the death sentence.'" *Enmund*, 458 U.S. at 798 (*quoting Lockett v. Ohio*, 438 U.S. 586, 605 (1978)).

Thus, at the "separate, post-conviction penalty proceeding" that follows a conviction of a homicide offense, the Federal Death Penalty Act (FDPA) provides first for an "'eligibility' phase of the proceeding." *United States v. Davis*, 609 F.3d 663, 673 (5th Cir. 2010). There, the government must first prove beyond a reasonable doubt at least one of several statutorily enumerated factors involving the mental state and role of "the defendant" in the victim's death. 18 U.S.C. § 3591(a)(2)(B)-(D). As with many FDPA provisions, these eligibility factors were framed to not only satisfy constitutional requirements, but also, as the Fifth Circuit has recognized, to exceed them. *United States v. Williams*, 610 F.3d 271, 288 (5th Cir. 2010) (rejecting government's argument that § 3591 should be interpreted as expanding federal death-eligibility to the limits of *Tison* and *Enmund*).

The three such factors charged here in the second superseding indictment and death notice are, as defined in the FDPA, that "the defendant":

    (B)    "intentionally inflicted serious bodily injury that resulted in the death of the victim;"

    (C)    "intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or"

    (D)    "intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act

>constituted a reckless disregard for human life and the victim died as a direct result of the act."

18 U.S.C. § 3591(a)(2)(B)-(D)[2]; *see* ECF No. 314 at 12-13; ECF No. 523 at 2-3.

Although they differ in other respects, these factors all turn on the "the defendant['s]" own, individual "act" or the injury he "inflicted." *Id.*; *see United States v. Baskerville*, 491 F. Supp. 2d 516, 519, 522 (D.N.J. 2007) ("Despite the involvement of others in the crime, however, in capital cases the Constitution requires that Defendant's punishment be tailored to his personal responsibility and moral guilt"; thus, government must prove victim's death was "direct result" of defendant's having "ordered that" he "be killed"); *see also, e.g.*, *United States v. Basciano*, No. 05-CR-60, ECF No. 1260, Jury Instructions, at 7 (E.D.N.Y. May 27, 2011) (same); *United States v. Moussaoui*, No. 01-455-A, ECF No. 1702, Verdict Form, at 2 (Mar. 24, 2006) (jury asked to decide whether "victims died on September 11, 2001, as a direct result of the defendant's act, *i.e.*, Mr. Moussaoui's lies to federal agents," which resulted in their failure to uncover the conspiracy). In that way, these eligibility factors resemble the FDPA's separate list of "aggravating" factors, which the Fifth Circuit has recognized also must be proven by the defendant's own conduct, not that of any co-perpetrator.[3] *See United States v. Ebron*, 683 F.3d 105, 152 (5th Cir. 2012).

These three eligibility factors also share the requirement that the victim's death have "resulted" from or been "a direct result" of the defendant's conduct. As the Supreme Court

---

[2] The remaining statutory eligibility factor, not charged here, is that the defendant "intentionally killed the victim." 18 U.S.C. § 3591(a)(2)(A).

[3] If a federal capital sentencing jury finds one of the eligibility factors listed in § 3591(a)(2), it also must find at least one of the aggravating factors listed in § 3592(c) before the defendant may be considered for a death sentence.

has recognized, such an element, found in many federal criminal statutes, demands "but for" causation. This means that the death "would not have occurred in the absence of" the defendant's actions. *United States v. Burrage*, 571 U.S. 204, 208, 212-13 (2014). In other words, it does not suffice for the government to prove that the defendant's own action "contributed" to or was a "substantial" cause of the victim's death along with another cause. *Id.* at 216. Thus, in *Burrage*, where the victim died after using heroin sold by the defendant but the autopsy found the victim had other drugs in his system that might have killed him even without the heroin, the Court concluded that the government had not proven guilt because it had not established that "death resulted," in a "but-for" sense, from the defendant's heroin distribution. *Id.* at 218-19.

Because these three FDPA eligibility factors use the same kind of "death results" language as the statute in *Burrage* (indeed, even stricter language in Factors C and D, requiring a "direct" result), here, the government must prove, as in *Burrage*, that Mr. Sagastume and Hector LNU would not have died but for Mr. Duran Gomez's own, individual act or acts, in order for him to be eligible for a death sentence under Section 3591(a)(2)(B)-(D).

**III. Because the government is negating an essential element of the three charged FDPA eligibility factors, Mr. Duran Gomez is not legally subject to a death sentence, and the Court should strike the death notice.**

Accordingly, not only the government's evidence but, indeed, its own allegations affirmatively negate an essential element of all three charged FDPA eligibility factors, namely, that Mr. Duran Gomez's own acts constituted a "but-for" cause of either victim's death. For that reason, the Court should strike these factors from the government's death notice and the indictment. *See, e.g.*, *Baskerville*, 491 F. Supp. 2d at 521-22 (striking

eligibility factor alleged by government based on insufficiency of government's anticipated evidence); *see also, e.g.*, *United States v. Smith*, 630 F. Supp. 2d 713, 716-18 (E.D. La. 2007) (same, for aggravating factor). And because Mr. Duran Gomez is not eligible for a death sentence without at least one of those factors, the Court should also strike the death notice and allow this prosecution to be tried as a non-capital one.

The Fifth Circuit's recent opinion in *United States v. Fackrell*, 2021 WL 926905 (5th Cir. Mar. 11, 2021), does not require a different result. There, Fackrell and a codefendant were convicted of murder in federal jurisdiction after they took shanks into a fellow prison inmate's cell and stabbed him multiple times. *Fackrell*, 2021 WL 926905, at *1. On appeal, Fackrell argued for the first time that the government failed to prove he had one of the requisite mental states in § 3591(a)(2)(B)–(D):

> Because the coroner did not determine which blow was fatal, Fackrell argues that the jury could not have determined that he was the but-for cause of [the victim's] death. In his view, the jury convicted him of first-degree murder because he aided and abetted in [the victim's] murder, and this level of culpability does not demonstrate that he had a requisite mental state.

*Id.* at *4. Reviewing for plain error, the court rejected this argument on the ground that "aiding and abetting liability does satisfy the requisite mental states in § 3591(a)(2)(C) and (D)." *Id.*

That logic does not apply here. As an initial matter, the *Fackrell* defendants were charged under 18 U.S.C. § 1111, which required the government to prove they killed their victims "with premeditation and malice aforethought." *United States v. Fackrell*, No. 1:16-cr-26-MAC-ZJH-2, ECF No. 47, Superseding Indictment (E.D. Tex. June 2, 2016). Aiding and abetting a premeditated, intentional crime provides a much sturdier foundation for satisfying the § 3591(a)(2) mental states than does aiding and abetting the crimes with which

7

Mr. Duran Gomez is charged, which do not require such a heightened mental state.

More important, *Fackrell* held only that aiding-and-abetting liability is sufficient to "satisfy the requisite mental states" in § 3591(a)(2)(C) and (D). But the § 3591(a)(2) factors contain not just a "mental state," but also a causation requirement:

> The threshold intent at issue in this case—18 U.S.C. § 3591(a)(2)(D)—consists essentially of three elements. It requires first that the defendant have "intentionally and specifically engaged in an act of violence." 18 U.S.C. § 3591(a)(2)(D). Second, the defendant must have done so "knowing that the act created a grave risk of death to a person . . . such that participation in the act constituted a reckless disregard for human life." *Id.* Finally, the "victim [must have] died as a direct result of the act."

*Williams*, 610 F.3d at 285 (alterations in original). That aiding-and-abetting liability can satisfy the "mental state" portion of a § 3591(a)(2) factor, as *Fackrell* held, does not mean it necessarily satisfies the causation portion—an issue *Fackrell* did not decide. And in any event, *Fackrell* specifically limited its holding to § 3591(a)(2)(C) and (D); it did not extend that holding to § 3591(a)(2)(B), which the government has alleged in this case. 2021 WL 926905, at *4.

Undersigned counsel have conferred with counsel for the government, who have advised that they oppose this motion.

A proposed order is attached.

Respectfully submitted,

| | |
|---|---|
| /s/ Wendell A. Odom, Jr<br>WENDELL A. ODOM, JR.<br>Texas State Bar # 15208500<br>Federal Bar # 0947<br>440 Louisiana, Suite 200<br>Houston, TX 77002<br>(713) 223-5575<br>(713) 224-2815 (FAX) | */s/ James Wyda*<br>JAMES WYDA (#25298)<br>Federal Public Defender<br>Office of the Federal Public Defender<br>100 South Charles Street<br>Tower II, 9th Floor<br>Baltimore, Maryland 21201<br>(410) 962-3962<br>(410) 962-0872 (FAX) |
| */s/ Neal Davis, III*<br>NEAL DAVIS, III<br>Texas State Bar #24038541<br>Federal Bar # 706329<br>440 Louisiana, Suite 200<br>Houston, TX 77002<br>(713) 223-5575<br>(713) 224-2815 (FAX) | */s/ Julie L.B. Stelzig*<br>JULIE L.B. STELZIG (#27746)<br>Assistant Federal Public Defender<br>6411 Ivy Lane, Suite 710<br>Greenbelt, Maryland 20770<br>(301) 344-0600<br>(301) 344-0019 (FAX) |