IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. H-10-459 |
| WILMAR RENE DURAN GOMEZ | |
| Defendant. | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO MOTION TO STRIKE NOTICE OF DEATH RE: ELIGIBILITY FACTORS**

NOW COMES the United States of America, by Jill Stotts and Lisa Collins, Assistant United States Attorney and Barry K. Disney, Department of Justice Trial Attorney and hereby responds to the Defendant's Motion to Notice of Death Re: Eligibility Factors (Doc. 625) as follows:

**I. Introduction**

The Defendant argues that the Government's Notice of Intent must be stricken because, although the Government stands ready to prove that the Defendant and his co-conspirators beat and tortured the victims to death over the course of seven days, the exact blow that caused the deaths cannot be established. This argument cannot squared with the legislative history behind the gateway threshold intent factors contained in 18 U.S.C. § 3591(a)(2) or controlling precedent from the Supreme Court and the Fifth Circuit which holds that aiding and abetting can satisfy the request mental states. The Defendant's attempt to use the non-death penalty case of *United States v. Burrage*, 571 U.S. 204, 208, 212-13 (2014) to transform § 3591(a)(2) from a statute setting forth the requisite mental state for death eligibility into one that imposes a heightened causation standard for

1

capital cases is unpersuasive. Not only is *Burrage* a non-death penalty case that did not address § 3591(a)(2), it involved a lone defendant with no discussion of aiding and abetting liability, and is therefore, distinguishable.

## II. Background

In November 2006, the Defendant illegally smuggled aliens into the United States. Two Honduran men attempted to escape the warehouse where the Defendant was holding them until he received their smuggling fees. As punishment, the Defendant beat and tortured the men over the course of a week. He also sodomized one of the men with several objects and directed someone to set the man on fire. On November 14, 2006, the two men—Abelardo Sagastume and Hector (last name unknown) —succumbed to their injuries and died.

The Defendant did not act alone. In many of the beatings, he acted jointly with Efrain Rodriquez-Mendoza and/or Jose Alberto Bolanos-Garza. Examples of this joint action include, but is not limited to, the following:

> Day Two, November 7, 2006 – Acting upon the Defendant's orders, Rodriquez-Mendoza and Bolanos-Garza placed Sagastume and Hector (LNU) and five other men, bound and naked, into a room at the warehouse. There, the Defendant, Rodriquez-Mendoza and Bolanos-Garza beat the men.

> Day Three, November 8, 2006 – While Sagastume and Hector (LNU) and five other men were bound and naked in a room at the warehouse, the Defendant and an unidentified man entered the room and resumed beating Hector LNU, and three other men. Sagastume was present but was not beaten. During this beating, the Defendant sodomized Hector LNU using the end of a broomstick and forced him to lick the fecal matter remaining on the broomstick end.

Day Five, November 10, 2006. More beatings occurred. The Defendant administered the beatings first, and then Rodriguez-Mendoza continued the beatings.

Day Six, November 11, 2006. The Defendant, Bolanos-Garcia and Rodriguez-Mendoza jointly beat the victims and three others. During the beatings, the Defendant sodomized Hector LNU with a beer bottle. At some point during the beatings the Defendant instructed Rodriquez-Mendoza to pour some form of flammable accelerant on Hector LNU's back and ignite it.

A federal grand jury charged the Defendant with seven counts arising these facts. Count One charges a conspiracy to smuggle aliens into the United States. Counts Two and Three charges harboring the victims, resulting in their death. Counts Four and Five charges kidnapping the victims, resulting in their death. Count Six and Seven charges hostage taking, resulting in the victim's deaths. Counts Two through Seven carry a possible punishment of death if convicted. Accordingly, the Second Superseding Indictment includes a "Special Findings" section alleging three threshold mental intent factors set forth in 18 U.S.C. § 3591(a)(2)(b)-(d):

- [I]ntentionally inflicted serious bodily injury that resulted in the deaths of Abelardo Sagastume [Counts Two, Four, and Six] and Hector LNU [Counts Three, Five, and Seven] (Title 18, United States Code, Section 3591(a)(2)(B));
- [I]ntentionally participated in one or more acts, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Abelardo Sagastume [Counts Two, Four, and Six] and Hector LNU [Counts Three, Five, and Seven] died as a direct result of such act or acts (Title 18, United States Code, Section 3591 (a)(2)(C));
- [I]ntentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victims, Abelardo Sagastume [Counts Two, Four, and Six] and Hector LNU [Counts Three, Five, and Seven], died as a direct result of the

3

act (Title 18, United States Code, Section 3591(a)(2)(D)).

### III. Applicable Legal Principles

There is no requirement under the Federal Death Penalty Act (FDPA), and the Defendant cites none, that requires a defendant be the actual killer to be eligible for the death penalty. Rather, a non-killer's eligibility for the death penalty requires an examination of his or her personal culpability to determine if it rises to the standards set forth in 18 U.S.C. § 3591(a)(2). As one court has stated:

> "[A] co-conspirator in a murder conspiracy who did not himself commit the killing may be criminally liable for the actions of others. However, as case law makes clear, mere participation in a felony murder -- or, it logically follows, mere participation in a murder conspiracy -- while sufficient to support criminal liability, is not alone sufficient to qualify a defendant for a sentence of death. *Rather, it is Defendant's role in the conspiracy, his personal culpability, that must be examined in determining whether Defendant may be subject to the death penalty.*"

*United States v. Baskerville*, 491 F. Supp. 2d 516 (D.N.J. 2007). Each case is different, as is the role of each non-killer. However, the Supreme Court, and now 18 U.S.C. § 3591(a)(2), has identified the standard that must be satisfied for a non-killer to be eligible for the death penalty.

18 U.S.C. 3591(a)(2) was designed to fit the commands of *Enmund v. Florida* and *Tison v. Arizona. United States v. Webster*, 162 F.3d 308, 355 (5th Cir. 1998). In *Enmund v. Florida,* 458 U.S. 782, 797 (1982), the defendant was sentenced to death under facts that established, at most, that he was a get-away-driver for a robbery in which the victims were murdered. The Florida Supreme Court upheld the defendant's death sentence, rejecting the argument that because the evidence did not establish he intended to take life, the death penalty was barred by the Eight Amendment of the United States Constitution. *Id.* 458 U.S. at 787. In overturning the death sentence, the Supreme Court held that the Eight Amendment was violated when a defendant is sentenced to death simply

4

because a murder occurred during a robbery:

> "[b]ecause the Florida Supreme Court affirmed the death penalty in this case in the absence of proof that Enmund killed or attempted to kill, and regardless of whether Enmund intended or contemplated that life would be taken, we reverse the judgment upholding the death penalty.

*Id.*

The *Enmund* court held that the defendant's criminal culpability must be limited to his participation in the robbery, and his punishment must be tailored to his personal responsibility and moral guilt. *Id* at 801. In overturning the death sentence, the Court noted that the evidence as to Enmund's involvement was limited to being present in the get-away vehicle. The Court acknowledged, however, that "it would be very different if the likelihood of a killing in the course of a robbery were so substantial that one should share the blame for the killing if he somehow participated in the felony." *Id*. at 799.

In *Tison v. Arizona*, 481 U.S. 137, 157 (1987) the Supreme Court clarified its ruling in *Enmund*. The defendants in *Tison* were brothers who smuggled guns into a prison and helped their father and his cellmate escape. When a vehicle broke down during the escape, the group accosted a family of four that had stopped to help. As the defendants stood by, the father and cellmate shot and killed the family. *Id.* at 141. Arizona charged the defendants with capital murder based on Arizona's felony-murder law providing that a killing occurring during the perpetration of a robbery is punishable by death. *Id.* at 142. As noted by the Supreme Court: [t]he issue raised by this case is whether the Eighth Amendment prohibits the death penalty in the intermediate case of the defendant whose participation is major and whose mental state is one of reckless indifference to the value of human life. *Enmund* does not specifically address this point. *Id.* at 152. The *Tison* Court upheld the death sentence holding that "major participation in the felony committed, combined with reckless

indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement". *Id.* at 158.

The commands of *Enmund* and *Tison* were codified in 18 U.S.C. 3591(a)(2). *United States v. Webster*, 162 F.3d 308, 355 (5th Cir. 1998). Section 3591(a)(2) provides that for a defendant to be eligible for the death penalty, the government must first prove that the defendant had the requisite mental state when he committed the offense. This requirement is satisfied if the government proves, beyond a reasonable doubt, at least one of four statutory intent factors. These are that the defendant:

> (A) intentionally killed the victim;
>
> (B) intentionally inflicted serious bodily injury that resulted in the death of the victim;
>
> (C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or
>
> (D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act.

Section 3591(a)(2) is, on its face, directed at a defendant's mental state. See, e.g., *United States v. Allen*, 406 F.3d 940 (8th Cir. 2005) (noting that the factors set forth in § 3591(a)(2) "provides four ways to prove the requisite mental state"); see also *Webster*, 162 F.3d at 355, (noting that § 3591(a)(2) "codifies the command in [*Enmund v. Florida,* [citation omitted] and *Tison v. Arizona*, [citation omitted] to limit the imposition of the death penalty to those murderers who both undertake felony participation and demonstrate at least reckless indifference to human life"); *Id*. at

6

322. As the Supreme Court has observed, the preliminary intent factor asks the jury to "determine whether there was a killing or death resulting from the defendant's intentional engagement in life-threatening activity." *United States v. Jones*, 527 U.S. 373, 407 (1999).

The statute's language anticipates various factual scenarios and mental states. In so doing, Congress indicated that its intent was to make capital punishment available not just in the narrow circumstance where the defendant intentionally killed the victim, but also in other "particularly heinous circumstances . . . where the defendant acted with a state of mind short of an intent to kill or in circumstances where an intent to kill can be imputed to the defendant." See House Report No. 103-466 (Mar. 25, 1994) (emphasis added). "These circumstances can include situations in which the defendant *intentionally and substantially participated in actions that resulted in a death* and where the defendant's participation in an act of violence constituted extreme reckless indifference for human life." *Id.* (emphasis added). As its legislative history thus makes plain, Section 3591(a)(2)(B)-(D) was specifically intended to encompass circumstances such as the present one, where the defendant intentionally participated in a series of beatings that resulted in the victims' death. See also, *United States v. Cheever*, 423 F. Supp. 2d 1181, 1201 (D. Kan. 2006) (holding that the first two factors describe a person who personally brings about a death, the third factor describes a person who intentionally involves himself in an act knowing that someone will encounter lethal force, and the fourth factor describes a person who intentionally engages in violent conduct that could kill someone).

The application of 18 U.S.C. 3591(a)(2) was recently considered in *United States v. Fackrell,* 2021 U.S. App. LEXIS 7175 (5th Cir. Mar. 11, 2021). Fackrell and Cramer, both inmates in a federal penitentiary, attacked and beat another inmate to death. Following his conviction and imposition of the death penalty, Fackrell argued that the government had failed to prove that he had

the requisite mental state required in Sections 3591(a)(2)(B)-(D) because all require actions that *result* in death of the victim. Fackrell argued that because the coroner did not determine which blow was fatal, the jury could not determine that he was the "but-for" cause of the inmate's death and that aiding and abetting in the murder was insufficient to establish the requisite level of culpability required by the statute. In rejecting Fackrell's argument, the Fifth Circuit made clear that "even if the jury convicted Fackrell on the basis of aiding and abetting in [the victim's] murder, that finding is a sufficient basis for concluding that he had the requisite mental state under § 3591(a)(2)(C) and (D). The *Fackrell* court relied, in part, on *United States v. Paul,* 217 F.3d 989 (8th Cir. 2000). Paul participated in a robbery wherein the victim was shot in the head. The evidence was disputed, however, on whether it was Paul or his co-conspirator who fired the fatal shot. Paul was convicted for aiding and abetting murder under 18 U.S.C. §§ 2 and 1111(a) and sentenced to death. In rejecting Paul's argument on the sufficiency of the evidence, the Eighth Circuit held that the requisite intent required by 18 U.S.C. § 3591(a)(2) was satisfied when the jury concluded that the defendant had intentionally committed an act (aided and abetted), which he knew would kill the victim and that it was not necessary for the jury to determine who fired the fatal shot:

> "It is also clear that Williams died as a direct result of Paul's acts. The medical examiner testified the cause of Williams' death was a gunshot wound to the head. *The evidence showed, as will be discussed in greater detail in the next section, that either Paul or Ingle, or both men shot Williams. Either way, the evidence established, and the jury agreed, Paul aided and abetted in the shooting of Williams.* Because the gunshot wound was the cause of Williams' death and the jury found that Paul aided and abetted in that act, the requirement in section 3591(a)(2)(C) that "the victim died as a direct result of the act" is satisfied by the jury's findings."

*U.S. v. Paul*, 217 F.3d at 998 (emphasis added).

### III. Discussion

In the Amended Notice of Intent to Seek the Death Penalty the Government has given notice that it intends to rely upon threshold factors set forth in 18 U.S.C. § 3591(a)(2)(B) – (D) (ECF 523), that is, the defendant:

- Intentionally inflicted serious bodily injury the resulted in the death of the victims (18 U.S.C. § 3591(a)(2)(B)).

- Intentionally participated in one or more acts, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victims died as a direct result of such act or acts (18 U.S.C. § 3591(a)(2)(C)).

- Intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victims died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D)).

The Defendant's only argument that he has not met the requisite mental state of § 3591(a)(2)(B)-(D) is based on whether he personally caused the victims death. The Defendant contends that because the Section 3591 requires that the victim died as a result of the act in which the defendant participated, he is absolved of death eligibility where there are additional factors that also contributed to the victim's death. He appears to argue that, in order to have the requisite mental state to satisfy the Section 3591 gateway factor, his actions must have been the sole or nearest cause of death. The Defendant thus seeks to transform Section 3591 from a statute that sets forth the requisite mental state for death eligibility into one that imposes a heightened causation standard for capital cases. That, however, is not what the statute says, or was intended to say. Moreover, such a reading is inconsistent with the very purpose of the statute, which is to broaden liability while

ensuring that the defendant acted with the requisite mental culpability to render him eligible for capital punishment – not to relieve the defendant of responsibility simply because an additional act became another cause of the victim's death. See. *United States v. Moussaoui,* 382 F.3d 453, 473 n.21 (4th Cir. 2004) (noting without deciding that defendant might be eligible for death penalty pursuant to 18 U.S.C. § 3591(a)(2)(C) simply for failing to disclose knowledge of September 11 terrorism conspiracy, even if he was not actually part of September 11 attacks).

The defendant's sole support for his position is *United States v. Burrage*, 571 U.S. 204, 208, 212-13 (2014). Burrage was charged with the non-capital offense of distribution of drugs that carried a sentence enhancement if the distribution resulted in death or serious bodily injury. Burrage had sold heroin to another person, and the other person used the heroin and other drugs and died the following day. There was no evidence that Burrage was connected in any manner to the "other drugs" the other person had used. After the government's expert testified that it was impossible to determine if the decedent died from the heroin use alone, the district court instructed the jury that it could find the defendant guilty if it found that the heroin he distributed *contributed* to the cause of death. In reversing the case, the Supreme Court held that where use of a drug distributed by a defendant was not an independently sufficient cause of a victim's death or serious bodily injury, the defendant could not be liable for the penalty enhancement unless such use was a "but-for" cause of the death or injury. *Burrage v. United States*, 571 U.S. 204, 134 S. Ct. 881 (2014).

*Burrage* is distinguishable from the facts of the present case as it did not involve aiding and abetting. In *Burrage* the "other drugs" consumed by the decedent were completely unconnected to the defendant. The expert in *Burrage* could not say that the descendant would have lived if he had not taken the heroin provided by Burrage but could only say that the heroin contributed to death. In the present case the Defendant acknowledges that the evidence the Government intends to produce

will establish that the victims died as a result of the beatings inflicted upon them by Duran-Gomez and his coconspirators. Perhaps *Burrage* would have relevance if the facts established that someone unconnected to the Defendant and his co-conspirators also beat the victims. But that is not the case.

As in *U.S. v. Jones*, the question for the threshold intent factor asks the jury to "determine whether there was a killing or death resulting from the defendant's intentional engagement in life-threatening activity." The answer to that question is yes: the victims died as a result of Duran-Gomez's intentional engagement in the beating and torture of the victims. The evidence the Government intends to produce at trial clearly establishes the threshold intent factors of 18 U.S.C. § 3591(a)(2)(B)-(D). It does not matter whether the fatal blow was inflicted by the Defendant or one of his co-conspirators. The Defendant's motion should be denied,

## IV.   CONCLUSION

For all of the foregoing reasons, the Government respectfully requests that this Court deny the motion.

Respectfully submitted,

JENNIFER LOWERY
Acting United States Attorney

By: */s/ Barry K. Disney*
Barry K. Disney
Trial Attorney
United States Department of Justice

*/s/ Jill Jenkins Stotts*
JILL JENKINS STOTTS
Assistant United States Attorney

*/s/ Lisa Marie Collins*
LISA MARIE COLLINS
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

<pre>                              /s/ Barry K. Disney
                              Barry K. Disney
                              Trial Attorney
                              Capital Case Section
                              United States Department of Justice
                              1331 F. Street NW
                              Washington, DC  20004
                              Barry.Disney@usdoj.gov</pre>