United States District Court
for the Southern District of Texas
Houston Division

| | | |
|---|---|---|
| **United States of America** | § | |
| | § | |
| v. | § | **Criminal No. H-10-459** |
| | § | |
| **Wilmar Rene Duran Gomez** | § | **[Capital Case]** |

\* \* \* \* \* \* \* \* \* \* \*

### Defendant Duran Gomez's Motion to Bar the Prosecution from Taking Inherently Inconsistent Positions Against Him and Co-Defendant Efrain Rodriguez-Mendoza

Defendant Wilmar Rene Duran Gomez, by undersigned counsel, respectfully moves the Court for an order barring the government from asserting fundamentally contradictory factual theories about the crime as it prosecutes him and his co-defendant, Efrain Rodriguez-Mendoza, in this capital case.

In the formal authorization process, the government obtained the Attorney General's approval to seek the death penalty against Mr. Rodriguez-Mendoza by taking the position that Mr. Rodriguez-Mendoza's "conduct that caused the deaths of the victims was at least equal to the conduct of co-defendant Duran" and that he acted "by his own free will." Bates Number 10cr459-12738-39.[1] And the government apparently intends to take that position at Mr. Rodriguez-Mendoza's trial. ECF No. 409 at 14 & n.2. The government should not be free to reverse course at Mr. Duran Gomez's trial — especially to a jury kept in the dark about its contrary position in his codefendant's case — and try to inflate Mr. Duran Gomez's role or

---

[1] These references are from unsigned draft of the government's memorandum requesting authorization to seek the death penalty against Mr. Rodriguez that was produced in discovery. Defense counsel have requested a copy of the final submission, but the government has declined, citing work product privilege. Mr. Duran Gomez will address this issue when it files discovery-related motions upon the completion of the discovery process.

1

relative culpability by alleging that Mr. Rodriguez-Mendoza was less culpable, or that his free will was vitiated.

This defense concern is not unfounded. In other death penalty and serious homicide cases, the prosecution has taken "inherently factually contradictory" theories to convict multiple persons of the same crimes at separate trials. *See, e.g., Smith v. Groose*, 205 F.3d 1045, 1052 (8th Cir. 2000) (in felony-murder prosecution, Courts holds that the use of inherently factually contradictory theories violates the principles of due process."); *In re Sakarias*, 35 Cal. 4th 140, 155-56, (2005) (holding that the prosecution's use of inconsistent theories denied the defendant due process and fundamental fairness, requiring vacatur of his death sentence, because in doing so, "the state necessarily urges conviction or an increase in culpability in one of the cases on a false factual basis, a result inconsistent with the goal of the criminal trial as a search for truth.").

Absent a Court order barring this practice, the prosecution may well be tempted to advance inherently contradictory factual theories on these core issues between Mr. Duran Gomez's and Mr. Rodriguez-Mendoza's capital prosecutions. If the Court is not willing to bar such flip-flopping, then at least the jurors must be told of the prosecution's prior assertions, and this evidence admitted against the government as party admissions. Without such a remedy, Mr. Duran Gomez's Fifth and Eighth Amendment rights to due process and a reliable sentencing decision would be violated, this capital prosecution would be fundamentally fair.

> **I. In the formal authorization process, the government previously alleged that Efrain Rodriguez-Mendoza's culpability was "at least equal" to that attributed to Mr. Duran Gomez.**

The Department of Justice ("DOJ") has a Capital Case Review Committee, which exists to review each death-eligible case and recommend to the Attorney General whether to seek death. *See* U.S. Dep't of Justice, U.S. Attorneys' Manual § 9-10.040 (2014). The DOJ also has a

2

Capital Case Section within the Criminal Division, which is primarily responsible for assisting the Capital Case Review Committee.[2] A U.S. Attorney requesting authorization to seek the death penalty submits his recommendation to the Capital Case Review Committee through the Capital Case Section. *See* U.S. Dep't of Justice, U.S. Attorneys' Manual §§ 9-10.080, 9-10.050. This recommendation "shall" include a "[p]rosecution memorandum" that provides details of the facts and supportive evidence, a discussion of the applicable threshold intent factors, the aggravating and mitigating factors, background and criminal record of the defendant(s) and the victim(s), and the U.S. Attorney's recommendation of whether the government should seek the death penalty. *See id.*, § 9-10.080. The Capital Review Committee reviews the materials submitted and makes a recommendation to the Attorney General through the Deputy Attorney General. *See id.* at § 9-10.130.

When the U.S. Attorney's Office for the Southern District of Texas sought authorization to pursue the death penalty against Efrain Rodriguez-Mendoza, it submitted a memorandum to the Capital Case Review Committee and, by the extension, the Attorney General, outlining the reasons why it believed the death penalty was an appropriate punishment for him. *See* Bates Number 10cr459-12724. In this memo, the prosecution declared its position that "Rodriguez-Mendoza's conduct that caused the deaths of the victims was at least equal to the conduct of co-defendant Duran, for whom the Attorney General has authorized seeking the death penalty." Bates Number 10cr459-12738. The government also took the position that:

> Although Duran directed Rodriguez to effect blows or other acts of physical abuse at certain times, Rodriguez also beat the aliens by his own free will. Moreover, this conduct was seldom, if ever, aroused or provoked by unpremeditated or inflammatory emotions. Indeed, on some occasions,

---

[2] *See* Department of Justice, *About the Criminal Division: Capital Case Section*, https://www.justice.gov/criminal/capital-case-section (last accessed Jan. 22, 2021)

3

>he initiated, momentarily departed from, and returned to resume horrific and torturous acts.

Bates Number 10cr459-12738.

The government's position that Mr. Rodriguez-Mendoza's culpability is at least equal to that of Mr. Duran Gomez's, and that he acted of his own free will is significant because the Attorney General relied on this when authorizing the government to seek the death penalty against Mr. Rodriguez-Mendoza. *See* ECF No. 326.

### II. Inherently contradictory theories about the crime, asserted by the government against separately prosecuted codefendants, violate the Constitution and the doctrine of judicial estoppel.

Due process and fundamental fairness prohibit the government from engaging in actions that render the proceedings in a criminal case fundamentally unfair. *See Turner v. State of La.*, 379 U.S. 466, 472 (1965) ("A fair trial in a fair tribunal is a basic requirement of due process."); *Drake v. Kemp*, 762 F.2d 1449, 1478 (11th Cir. 1985) (Clark, J. concurring) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)) ("[S]ociety wins not only when the guilty are convicted but when criminal trials are fair; our system of justice suffers when any accused is treated unfairly.'"). When the government makes conflicting assertions in order to influence an outcome in the case, [t]his flip flopping of theories of the offense [is] inherently unfair…[and] violates that fundamental fairness essential to the very concept of justice." *Drake*, 762 F.2d at 1478.

The issue of the government taking contradictory positions has often arisen, as in *Drake*, when, unknown to each jury, the government seeks to advance fundamentally inconsistent factual theories in separate prosecutions of codefendants. Courts have generally agreed there must be constraints on this tactic. *See, e.g., Smith*, 205 F.3d at 1051 (8th Cir. 2000); *Thompson v. Calderon*, 120 F.3d 1045, 1055-59 (9th Cir. 1997) (*en banc*) (plurality opinion), *rev'd on other*

4

*grounds*, 523 U.S. 538 (1998); *United States v. Salerno*, 937 F.2d 797, 812 (2nd Cir. 1991); *United States v. Bakshinian*, 65 F.Supp.2d 1104, 1110-11 (C.D. Cal. 1999).

Here, similarly, in the formal Department of Justice authorization process, the United States Attorney's Office has made representations about the roles and actions of the co-defendant in order to achieve a desired outcome: in this case, formal authorization by the Attorney General to seek the death penalty against Mr. Rodriguez-Mendoza. The government's statements that Mr. Rodriguez-Mendoza "beat the aliens by his own free will" and that his conduct "was at least equal" to that of Mr. Duran Gomez successfully persuaded the Attorney General, and are directly responsible for the Attorney General's seek decision against him. Moreover, the government presumably intends to take that same position at Mr. Rodriguez-Mendoza's separate trial, which the court has severed and is scheduled to occur after Mr. Duran Gomez's. The government should not be permitted to "flip-flop" back and forth, by ― in between Mr. Rodriguez-Mendoza's authorization and trial ― disavowing those positions at Mr. Duran Gomez's trial. To permit this would violate Mr. Duran Gomez's rights to Due Process and fundamental fairness. *See United States v. Higgs*, 353 F.3d 281, 326 (4th Cir. 2003) ("In some situations, the Due Process Clause prohibits the government from presenting mutually inconsistent theories of the same case against different defendants. For example, due process may be violated if "an inconsistency ... exist[s] at the *core* of the prosecutor's cases against the defendants for the same crime") (emphasis in original) (*quoting Smith*, 205 F.3d at 1052).

Furthermore, the Court should apply the doctrine of judicial estoppel against the prosecution to achieve the same result. "Because the rule is intended to prevent 'improper use of judicial machinery,' judicial estoppel "is an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). *See also Lowery v. Stovall*, 92

F.3d 219, 223 (4th Cir. 1996) (explaining that the doctrine precludes a party from taking a position inconsistent with the position that the party has previously taken); *Whaley v. Belleque*, 520 F.3d 997, 1002 (9th Cir. 2008) (holding that judicial estoppel simply will not tolerate inconsistent positions, in order "to protect the integrity of the judicial process and to prevent unfair and manipulative use of the court system by litigants." *United States v. McCaskey*, 9 F.3d 368, 379 (5th Cir. 1993). *See also* Rand G. Boyers, Comment, *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel*, 80 Nw. U. L. Rev. 1244 (1986) (discussing the principle that the position taken in a pleading, a deposition, or in testimony cannot be contradicted at a later judicial proceeding).

A position on Mr. Rodriguez-Mendoza's role and relative culpability taken by the government in its prosecution of Mr. Duran Gomez that is factually inconsistent, at its core, to the one taken in Mr. Rodriguez-Mendoza's seek memo and, presumably, at his trial, will create a false impression that threatens the truth-finding process. "The state cannot divide and conquer in this manner. Such actions reduce criminal trials to mere gamesmanship and rob them of their supposed purpose of a search for truth." *Drake*, 762 F.2d at 1478. Thus, both due process and judicial estoppel forbid such a prosecutorial tactic when, as here, there is a clear and categorical difference between the government's assertions in the codefendants' cases, and where those assertions are specifically designed to elicit particular outcomes: in this case, death sentences.

Moreover, without any prohibition on this conduct, the government will have the unconstrained ability to manipulate and subvert the truth-finding process in order to obtain a conviction and death sentence against Mr. Duran Gomez, which would be neither reliable nor legitimate, and would violate his Eighth Amendment rights. *See Murray v. Giarratano*, 492 U.S. 1, 8–9 (1989) ("the Constitution places special constraints on the procedures used to convict an

6

accused of a capital offense and sentence him to death. The finality of the death penalty requires a 'greater degree of reliability' when it is imposed.") (internal citations omitted).

Finally, allowing the government to take such diametrically opposed positions would also violate the prosecutors' ethical obligations. *See Berger v. United States*, 295 U.S. 78, 88 (1935) ("The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done….It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction…."); *United States v. Universita*, 298 F.2d 365, 367 (2d Cir. 1962) ("The prosecution has a special duty not to mislead; the government should, of course, never make affirmative statements contrary to what it knows to be the truth.").

### III. Alternatively, the court should permit the defense to inform the jury of the government's inconsistent position in Mr. Rodriguez-Mendoza's case.

Even if the Court does not prohibit the government from advancing theories different from those used to gain authorization to seek the death penalty against Mr. Rodriguez-Mendoza, "the jury is at least entitled to know that the government at one time believed, and stated…something different from what it currently claims. Confidence in the justice system cannot be affirmed if any party is free, wholly without explanation, to make a fundamental change in its version of the facts between trials, and then conceal this change from the final trier of fact." *United States v. GAF Corp.*, 928 F.2d 1253, 1260 (2d Cir. 1991). Thus, the government's prior statements should be treated as party admissions. *See id.* (holding that the bill of particulars constitutes a party admission when offered against the government); *United States v. Kattar*, 840 F.2d 118, 130-31 (1st Cir. 1988) (concluding that the term "party-opponent" encompasses the Justice Department acting in criminal cases and holding Department's

7

statements admissible under Fed. R. Evid. 801(d)(2)); *Bakshinian*, 65 F.Supp.2d at 1109 (rejecting the government's claims that its prior statements are not assertions of facts or evidence and finding that the government's statements "fall[] within the 'generous treatment' of party-opponent statements").

In *United States v. Salerno*, the Second Circuit held that jurors must be told that the government at one time believed and stated something different from the theory it currently espouses. *Salerno*, 937 F.2d at 811-12 (*citing GAF Corp.*, 928 F.2d at 1260). The Second Circuit concluded that a trial court's failure to stem the government's "unbridled use of [inconsistent] statements" would "invite abuse and sharp practice [and] would also weaken confidence in the justice system itself by denying the function of trials as truth-seeking proceedings. That function cannot be affirmed if parties are free, wholly without explanation, to make fundamental changes in the version of facts within their personal knowledge between [proceedings] and to conceal these changes from the final trier of fact." *Id.* at 811. *See also Bakshinian*, 65 F. Supp.2d at 1108 ("The government, however, bears the burden of convincing the jury that particular facts occurred and, moreover, between one [proceeding] and another, the government may not take inconsistent positions as to what occurred.").

Likewise, the jury here must be told that the prosecution at one time stated that Mr. Rodriguez-Mendoza "beat the aliens by his own free will" and that his "conduct that caused the deaths of the victims was at least equal to the conduct of co-defendant Duran." This evidence will be necessary to correct, and rebut, any false impression left by the government's arguments against Mr. Duran Gomez. Further, the evidence will provide clarification to the jurors not only about who did what per se, but also what the prosecution thinks about who did what, which will be critical to any sentencing determination by the jury. And the case for admitting such

information is even stronger at a capital-sentencing hearing, where the Rules of Evidence do not apply. *See* 18 U.S.C. § 3593(c).

Supreme Court precedent supports this. In *Bradshaw v. Stumpf*, 125 S. Ct. 2398 (2005), the Court vacated the portion of the judgment relating to respondent Stumpf's inconsistent theories claim because "[t]he prosecutor's use of allegedly inconsistent theories may have a more direct effect on Stumpf's sentence, however, for it is at least arguable that the sentencing panel's conclusion about Stumpf's principal role in the offense was material to its sentencing determination." *Stumpf*, 125 S.Ct. at 2407-08 (emphasis added). Similarly, any conclusions the jurors will make about Mr. Rodriguez-Mendoza's role will be material to any sentencing determination for Mr. Duran Gomez.

For these reasons, Mr. Duran Gomez moves the Court to bar the government from making inherently factually contradictory assertions that violate his rights to due process and fundamental fairness, namely, denying in Mr. Duran Gomez's case that Mr. Rodriguez-Mendoza was not equally culpable to Mr. Duran Gomez, or did not act "by his own free will." Mr. Duran Gomez further requests that if the Court does not bar such actions, that the government's prior contradictory positions be admitted at Mr. Duran Gomez's trial.

Undersigned counsel reached out to counsel for the government for their position on this motion, but did not receive a response before this filing.

A proposed order is attached.

9

Respectfully submitted,

| | |
|---|---|
| /s/ Wendell A. Odom, Jr | /s/ James Wyda |
| WENDELL A. ODOM, JR. | JAMES WYDA (#25298) |
| Texas State Bar # 15208500 | Federal Public Defender |
| Federal Bar # 0947 | Office of the Federal Public Defender |
| 440 Louisiana, Suite 200 | 100 South Charles Street |
| Houston, TX 77002 | Tower II, 9th Floor |
| (713) 223-5575 | Baltimore, Maryland 21201 |
| (713) 224-2815 (FAX) | (410) 962-3962 |
| | (410) 962-0872 (FAX) |
| | |
| /s/ Neal Davis, III | |
| NEAL DAVIS, III | /s/ Julie L.B. Stelzig |
| Texas State Bar #24038541 | JULIE L.B. STELZIG (#27746) |
| Federal Bar # 706329 | Assistant Federal Public Defender |
| 440 Louisiana, Suite 200 | 6411 Ivy Lane, Suite 710 |
| Houston, TX 77002 | Greenbelt, Maryland 20770 |
| (713) 223-5575 | (301) 344-0600 |
| (713) 224-2815 (FAX) | (301) 344-0019 (FAX) |