**United States District Court
for the Southern District of Texas
Houston Division**

| | | |
|---|---|---|
| **United States of America** | * | |
| | * | |
| **v.** | * | **Criminal No. H-10-459** |
| | * | |
| **Wilmar Rene Duran Gomez** | * | **[Capital Case]** |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**Motion for an Order Excluding the Government's Expert Witnesses
or, in the Alternative, Directing the Government to
Supplement Its Expert Witness Notice**

Defendant Wilmar Rene Duran Gomez respectfully moves this Court to exclude the

testimony of witnesses identified in the government's Notice of Its Intent to Use the

Testimony of an Expert Witness (ECF No. 648).  That Notice identifies five witnesses the

government intends to call at trial, and announces that the government also plans to elicit

testimony from an as-yet-unidentified "computer forensic expert" whose name will be

provided at an unspecified "later date."  Of the five named witnesses, the Notice provides

no job description for two of them; for a third, it lists only a single prior professional

affiliation, without indicating his current job description.  The government's discovery,

which the Notice (apparently) incorporates, includes *curriculum vitae* for only two

witnesses, and even those are years out of date.  More important, the Notice gives no

indication of what opinions the witnesses will offer at trial or the bases for those opinions,

and the government has not provided that information in discovery.

This barebones disclosure is inconsistent with both the spirit and the letter of

Federal Rule of Criminal Procedure 16(a)(1)(G), which requires the government to provide

the defendant, before trial, with "a written summary of any [expert] testimony that the

government intends to use," including "the witness's opinions, the bases and reasons for

1

those opinions, and the witness's qualifications." Because the government's Notice is

deficient, the Court should prohibit the government from calling the noticed witnesses at

trial. In the alternative, the Court should instruct the government to supplement its Notice

within thirty days to bring it into compliance with Rule 16(a)(1)(G). Either way, the Court

should also prohibit the government from identifying other experts absent a strong showing

that earlier notice could not have been provided

## I.     Background

Mr. Duran Gomez is charged in a second superseding indictment with one count of

conspiracy to transport and harbor unlawful aliens, under 8 U.S.C. §§ 1324(a)(1)(A)(ii),

(iii), (B)(i); two counts of harboring unlawful aliens resulting in death, under 8 U.S.C.

§§ 1324(a)(1)(A)(iii), (B)(i), (A)(v)(II), (B)(iv); two counts of kidnapping resulting in

death, under 18 U.S.C. §§ 1201(a)(1), 2; and two counts of hostage-taking resulting in

death, under 18 U.S.C. §§ 1203, 2. ECF No. 314 at 1-12. Trial is scheduled to begin on

May 23, 2022. ECF No. 643 at 3. Pursuant to a scheduling order jointly proposed by the

parties, the government was required to provide Mr. Duran Gomez with "expert

disclosures" (except for mental health experts) by June 18, 2021. ECF No. 643 at 1.

On June 17, 2021, the government filed a one-and-a-half-page document styled

Government's Notice of Its Intent to Use the Testimony of an Expert Witness (the

"Notice"). ECF No. 648. The Notice announces that the government "intends to call the

following list of witnesses and others, as provided in discovery, as expert witnesses":

- Dr. Steven Pustilnik—Former Galveston County Medical Examiner;[1]

- Dr. Erin Barnhar—Galveston County Medical Examiner's Office, Chief Medical Examiner;[2]

- Teresa S. Busby CLPE—Fingerprint specialist with Customs and Border Patrol;

- Rebecca Thomas—DNA Analysis;

- Amy Juanquenat—DNA Analysis;[3]

- A computer forensic expert to be supplemented at a later date.

ECF No. 648 at 1.  The Notice further provides that "[t]hese experts will testify regarding the evidence presented in the expertise listed above" and that the government "has provided defense counsel a copy of reports and access to all discovery and evidence in this case."  ECF No. 648 at 2.  Finally, the Notice asserts, in its conclusion section, that these experts "are qualified to conduct analysis based on their education, knowledge, skill, experience and training."  ECF No. 648 at 2.

There are no exhibits—such as *curriculum vitae* or written reports—attached to the Notice.

## II.    Argument

### A.    The government must provide meaningful pretrial notice of an expert witness' qualifications, opinions, and the bases for those opinions.

Rule 16(a)(1)(G) provides that, "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rule[] 702 . . . of the Federal Rules of Evidence during its case-in-chief at trial."

---

[1] The witness' first name is actually spelled "Stephen," not "Steven."

[2] The witness' last name is actually spelled Barnhart, not Barnhar.

[3] The witness' last name is actually spelled Jeanguenat, not Juanquenat.

Rule 702 governs testimony by a "witness who is qualified as an expert by knowledge, skill, experience, training, or education." The required summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(a)(1)(G). And it "'should inform the [defendant] whether the expert will be providing only background information on a particular issue or whether the witness will actually offer an opinion.'" *United States v. White*, 492 F.3d 380, 406 (6th Cir. 2007) (quoting Fed. R. Crim. P. 16 Advisory Committee notes (1993)). The government must provide a summary of expert testimony "even if such testimony may be considered 'routine' testimony of a case agent concerning standard criminal operations." *United States v. Anderson*, 446 F.3d 870, 875 (8th Cir. 2006).

"The purpose of Rule 16(a)(1)(G) is 'to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination.'" *United States v. Cuellar*, 478 F.3d 282, 294 (5th Cir. 2007) (en banc) (quoting Fed. R. Crim. P. 16 Advisory Committee notes (1993)). In addition, disclosure "'permit[s] the [defendant] to determine whether in fact the witness is an expert within the definition of Federal Rule of Evidence 702.'" *United States v. Nacchio*, 555 F.3d 1234, 1237 (10th Cir. 2009) (en banc) (quoting Fed. R. Crim. P. 16 Advisory Committee notes (1993)). Finally, "the disclosure requirement creates an incentive for the government to limit its use of experts to proper subject matters of expert testimony, lest broader expert testimony require broader pre-trial disclosure." *United States v. Cruz*, 363 F.3d 187, 196 n.2 (2d Cir. 2004).

4

Courts construe Rule 16(a)(1)(G) consistent with these purposes.  A summary is insufficient where it offers nothing more than "a list of topics" on which an expert will testify; "[t]o help the defendant prepare for trial, the disclosure must summarize what the expert will actually say about those topics."  *United States v. Williams*, 900 F.3d 486, 489 (7th Cir. 2018).  If the summary "provide[s] a list of the general subject matters to be covered, but d[oes] not identify what opinion the expert would offer on those subjects," it is deficient.  *United States v. Duvall*, 272 F.3d 825, 828 (7th Cir. 2001).  At the very least, a summary must "provide[] [the defendant] with the general essence" of a witness' testimony," *United States v. Dailey*, 868 F.3d 322, 328 (5th Cir. 2017), or "reveal in general terms the nature of [that] testimony," *Cuellar*, 478 F.3d at 293.  A summary that leaves the defendant "to presume what the testimony would be" is "deficient under Rule 16."  *United States v. Machado-Erazo*, 901 F.3d 326, 337 (D.C. Cir. 2018).  And— "'*perhaps most important*'"—the summary must disclose not just an expert's bottom-line conclusion, but also "the bases of th[at] opinion."  *Nacchio*, 555 F.3d at 1237 (quoting Fed. R. Crim. P. 16 Advisory Committee notes (1993)) (emphasis in *Nacchio*).

As for an expert witness' "qualifications," Fed. R. Crim. P. 16(a)(1)(G), a "vague avowal of experience concerning [the topics of testimony]" is insufficient.  *White*, 492 F.3d at 406.  A Rule 16 summary must "quantify the witnesses' experience" so that the defendant is "better prepared to challenge the witnesses' qualifications at trial" than he would have been otherwise.  *Id.* at 406-07.

**B.**   **The Court should prohibit the government from attempting to supplement its expert-witness list with names not specifically identified in its Notice.**

The Notice says the government intends to call six expert witnesses—five named, one unnamed—and "others, as provided in discovery."  ECF No. 648 at 1.

Notwithstanding this disclaimer, the Court should prohibit the government from eliciting expert testimony from anyone not specifically identified in its Notice.  Permitting the government to notice additional experts before trial would frustrate the objectives of Rule 16(a)(1)(G).

The discovery in this case is voluminous, spanning over 80,000 pages.  Buried in those pages are the names of hundreds of people whom the government might conceivably classify as experts on various topics—serologists, toxicologists, ballistics examiners, alien-smuggling experts, crime-scene investigators, computer analysts, cell-phone analysts, "forensic specialists," and additional fingerprint and DNA analysts, among others.  Mr. Duran Gomez cannot possibly be ready for trial in May 2022 if he has to prepare for the possibility that the government will call one or more of these people as expert witnesses. Investigating the background of any one of the possible experts would require a substantial investment of time—tracking down their résumés, reading articles they have written, reviewing their testimony in prior cases, soliciting feedback on their findings from defense experts, etc.  Given the hundreds of names scattered throughout the discovery, there simply is not enough time for counsel "to determine whether in fact" these unnoticed potential witnesses are "expert[s] within the definition of Federal Rule of Evidence 702."  *Nacchio*, 555 F.3d at 1237.

The result is that Mr. Duran Gomez, unable to conduct adequate pretrial investigation, would be deprived of "a fair opportunity to test the merit of the expert[s']" testimony through focused cross-examination."  *Cuellar*, 478 F.3d at 294.  Or, more likely, if the government notices additional experts on the eve of trial, Mr. Duran Gomez would be forced to request a continuance, so that he can mount a challenge to the experts'

qualifications under Rule 702, or find and retain a rebuttal expert who can testify on Mr.

Duran Gomez's behalf.  Rule 16(a)(1)(G) is specifically designed to avoid the need for

such continuances.  *Id.*[4]

Delaying trial because of the government's insufficient expert notice is particularly

inappropriate in this case, where Mr. Duran Gomez's alleged criminal conduct occurred in

2006.  The government has had fifteen years to run any required forensic tests, determine

how to present its case at trial, and track down expert witnesses who can testify.  Under

these circumstances, the government's dilatoriness in compiling a witness list cannot

justify additional delay that might prejudice Mr. Duran Gomez's defense.  Mr. Duran

Gomez therefore requests that the Court forbid the government from attempting to solicit

expert testimony from anyone not specifically named in its Notice.

**C.    The government's Notice does not adequately describe the expert witnesses' qualifications, opinions, or the bases for those opinions.**

As to the witnesses actually identified in the Notice, the government has failed to

satisfy its Rule 16(a)(1)(G) obligations.  The government purports to have complied with

the Rule by disclosing "reports" and other materials in discovery.  *See* ECF No. 648 at 2.

But even considering those discovery materials, which are described below, the

government has failed to provide the information required by Rule 16(a)(1)(G).

**1.    Erin Barnhart**

The discovery does not contain a *curriculum vitae* for Dr. Barnhart, and the Notice

says only that she works in the Galveston County medical examiner's office, without

---

[4] This is not an idle concern. At a status hearing on May 8, 2019, the government represented that it intended to call "[t]en to 15" expert witnesses.  The government also represented that their reports had been completed and made available to defense.  *See* Transcript of May 8, 2019 hearing at 15-16.

including any further description of her educational or professional background.  The

government has therefore failed to disclose Dr. Barnhart's "qualifications."  Fed. R. Crim.

P. 16(a)(1)(G).  *See White*, 492 F.3d at 406 (finding disclosure inadequate where it did not

"attach so much as a resume").

Nor is there any other reference to Ms. Barnhart in the discovery that indicates her

"opinions" and "the bases and reasons for those opinions," such as a written report or even

an email summarizing her findings.  Fed. R. Crim. P. 16(a)(1)(G).  Indeed, the Notice and

discovery do not even contain "a list of topics," *Williams*, 900 F.3d at 489, or "a list of the

general subject matters," *Duvall*, 272 F.3d at 828, that Ms. Barnhart will cover.  Because

the Notice leaves Mr. Duran Gomez "to presume what the [witnesses'] testimony would

be," it is "deficient under Rule 16."  *Machado-Erazo*, 901 F.3d at 337.

An electronic search of the entire discovery production yielded no references to Dr.

Barnhart, other than an email from the Medical Examiner's Office in the most recent

production (in response to a defense inquiry for reports by Dr. Barnhart) stating that "Dr.

Barnhart started working here in 2015 and has no knowledge of this case nor has she

prepared any information on these cases."  *See* Exhibit 1.  This leaves defense counsel

without any information about Dr. Barnhart's opinions or the bases for those opinions.

In addition, defense counsel anticipates that testimony by Dr. Barnhart may

implicate the Confrontation Clause of the Sixth Amendment, as the autopsy reports

produced in discovery were performed by a different pathologist.  *See Bullcoming v. New

Mexico*, 564 U.S. 647, 652 (2011) (holding Confrontation Clause does not "permit[] the

prosecution to introduce a forensic laboratory report containing a testimonial

certification—made for the purpose of proving a particular fact—through the in-court

testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification").  Without knowing Dr. Barnhart's opinions or the bases thereof, defense counsel will not be able to properly litigate any potential Confrontation Clause issues.

### 2.    Teresa Busby

As with Dr. Barnhart, neither the Notice nor the discovery includes a *curriculum vitae* for, or makes any other reference to, Ms. Busby.  The Notice states only that she is a "[f]inger print specialist with Custom and Border Patrol."  ECF No. 648 at 1.  The government's disclosures leave Mr. Duran Gomez to guess what Ms. Busby might say at trial.  Thus the government has not complied with its obligation to provide "a written summary of [Ms. Busby's] testimony," including her "opinions, the bases and reasons for those opinions, and [her] qualifications."  Fed. R. Crim. P. 16(a)(1)(G); *see White*, 492 F.3d at 406.

And, as in the case of Dr. Barnhart, Ms. Busby's testimony may raise Confrontation Clause concerns, since the limited fingerprint analysis produced in discovery was performed by a different individual who is now deceased.  *See Bullcoming*, 564 U.S. at 652.  Defense counsel cannot litigate potential Confrontation Clause challenges unless they know Ms. Busby's opinions and how she formed them.[5]

---

[5] Mr. Duran Gomez has been requesting additional discovery regarding fingerprint analysis in multiple discovery requests since September 2019. *See* Exhibit 3 at 3, 7-8; Exhibit 2 at 3; Exhibit 4 at 5-6, 12-13.

### 3.     A "computer forensic expert."

The Notice does not identify who, exactly will testify as a "computer forensic expert."  Because the Notice does not identify the witness, it necessarily fails to provide a written summary of that person's testimony, his or her opinions, the bases for those opinions, or his or her qualifications.[6]

### 4.     Stephen Pustilnik

Dr. Pustilnik is the author of the autopsy reports for the two victims that were performed in November 2006.  In those reports, Dr. Pustilnik describes the injuries he observed on various parts of the victims' bodies—e.g., abrasions to the face, lacerations on the arm—and concludes the victims died from multiple blunt force trauma.  Construed generously, Dr. Pustilnik's reports may contain "a written summary of [his] testimony" under Rule 702, namely, the victims' cause of death.  Fed. R. Crim. P. 16(a)(1)(G).  But the discovery also contains notes, diagrams, and many (but not all) of the photographs taken during the autopsies.  Defense counsel can construe the scope of Dr. Pustilnik's opinions to be those set forth in the four corners of the autopsy reports, but beyond that, the scope of his opinions is not clear.[7]

Even if the reports are deemed to describe the extent of Dr. Pustilnik's opinions, they do not lay out "the bases and reasons for [Dr. Pustilnik's] opinions." *Id.*  That is, they do not explain how Dr. Pustilnik concluded, based on the injuries he described, that the victims died from blunt force trauma, or how he ruled out other possible causes of death.

---

[6] Mr. Duran Gomez has been requesting forensic images of the computer and various cell phones seized in this case since 2019. *See* Exhibit 3 at 2, 4, 9; Exhibit 4 at 3, 6, 14.

[7] Mr. Duran Gomez has been requesting additional information regarding the autopsy reports since January, 2021. *See* Exhibit 3 at 7, Exhibit 4 at 11-12.

Dr. Pustilnik makes no attempt in the reports to connect the facts observed to his ultimate conclusion.

Moreover, the discovery produced to date does not contain all of the underlying data on which Dr. Pustilnik presumably relied—such as the internal photographs taken during autopsy (which have not been produced for one of the victims), some of the crime scene photographs that were shown to Dr. Pustilnik, or any information regarding the tissue samples that would have been taken as part of a routine autopsy.  This information is essential to determining whether Dr. Pustilnik has a proper basis for his opinion regarding the cause of death and cause of the victims' injuries.  If Mr. Duran Gomez cannot access this information and share it with his own medical-examiner witness, he will be denied "a fair opportunity to test the merit of [Dr. Pustilnik's] testimony through focused cross-examination.'"  *Cuellar*, 478 F.3d at 294.  Thus the Notice and the discovery are insufficient under Rule 16(a)(1)(G).  *See, e.g.*, *United States v. Vallodolid*, No. 2:15CR72-PPS/APR, 2018 WL 798189, at *2 (N.D. Ind. Feb. 9, 2018) ("According to the Government, the autopsy report, on which Dr. Kalelkar bases her opinions, has been produced in discovery.  I assume that the photos on which she bases her opinion, as well as Dr. Kalelkar's curriculum vitae, have also been produced to the defendant.  If they have not been produced then the Government is ordered to do so forthwith.").

In addition, neither the Notice nor the discovery describes Dr. Pustilnik's "qualifications."  Fed. R. Crim. P. 16(a)(1)(G).  His *curriculum vitae* is not included in the discovery.  Although his reports describe him as Galveston County's chief medical examiner as of the time of the autopsies in 2006, they provide no additional information about his educational background, professional affiliations, or relevant experience as of

11

that date.  And nothing in the discovery provides notice of what Dr. Pustilnik has been

doing since 2006.  The Notice and discovery therefore fail to "quantify [Dr. Pustilnik's]

experience," which means Mr. Duran Gomez cannot be "prepared to challenge [Dr.

Pustilnik's] qualifications at trial."  *White*, 492 F.3d at 406-07.

### 5.     Rebecca Thomas and Amy Jeanguenat

The discovery contains *curriculum vitae* for Ms. Thomas and Ms. Jeanguenat that

were produced in 2016.  From the dates listed in their résumés, it appears Ms. Thomas' was

created around 2008 (thirteen years ago) and Ms. Jeanguenat's was created around 2015

(six years ago).  More recent résumés are not included in the discovery.  And nothing in the

discovery "quantif[ies] the witnesses' experience" by, for example, describing the

witnesses' training in DNA analysis, specifying how much experience the witnesses have

in the field, or listing more recent cases in which they have served as expert witnesses.

Thus the government's disclosure fails to provide a complete and up-to-date description of

Ms. Thomas' and Ms. Jeanguenat's "qualifications."  Fed. R. Crim. P. 16(a)(1)(G).

As for the other information required by Rule 16(a)(1)(G), the discovery includes

three different iterations of a single "Forensic Case Report," dated June 26, 2007, that was

authored by Ms. Thomas and Ms. Jeanguenat.  That report contains the results of a DNA

analysis comparing approximately three dozen crime-scene samples (from objects found in

the warehouse, such as shoes, a hammer, and a beer bottle) with reference samples taken

from Mr. Duran Gomez, the two victims, and three other people present at the warehouse.

For each crime-scene sample, the report indicates how many people contributed DNA, as

well as those people's sex.  It also purports to "match" each crime-scene sample to a

reference sample, or to exclude certain reference samples as the source of DNA.

Defense counsel assumes these witnesses' testimony will be confined to the contents of the single report they have both authored.  But even construing the Notice in this way, the report produced in discovery does not provide a meaningful "written summary of any testimony" that the government will solicit from Ms. Thomas and Ms. Jeanguenat.  *Id.* Based on the three dozen crime-scene samples and six reference samples, there are over 200 possible permutations of matches, exclusions, or inconclusive results to which Ms. Thomas and Ms. Jeanguenat might testify—e.g., victim 1 is a match to DNA found on a wall, Mr. Duran Gomez is excluded from the DNA found on a pair of shoes, etc. Presumably the government does not intend to walk the jury through every possible permutation.  Yet the reports in discovery do not identify which matches, exclusions, or inconclusive results the government *does* expect to elicit from the witnesses.  As a result, the reports do not summarize "the witness[es'] opinions."  *Id.*

Courts have held expert summaries deficient even when they are substantially more detailed than the government's notice here.  In *Duvall*, for example, the government's pretrial notice described a witness' expected testimony as follows:

> Detective Erk will identify code language, the manner in which methamphetamine is distributed, tools of the trade in the distribution of methamphetamine, street prices of methamphetamine and the manner in which "cut" is added to methamphetamine to increase the amount of profit in the methamphetamine business.  Detective Erk will also testify concerning amounts of methamphetamine an individual might have for distribution, as opposed to personal use.

*Id.*  At trial, the witness "testified that methamphetamine users typically possess an eighth of an ounce or less, that possession of more than that is consistent with distribution rather than personal use, that methamphetamine is typically divided into small packages for distribution, and that possession of multiple small packages is inconsistent with personal use."  *Id.*  The Seventh Circuit held "the government's notice did not adequately

13

summarize or describe Erk's trial testimony." *Id.* Although the notice "provided a list of

the general subject matters to be covered," it "did not identify what opinion the expert

would offer on those subjects." *Id.* The court explained:

> [T]he statement that Erk would testify concerning "the manner in which
> methamphetamine is distributed" does not in any way identify the particular
> opinion that Erk offered at trial—for example, that methamphetamine is
> typically divided into small packages for distribution. Similarly, the
> statement that Erk would testify "concerning amounts of methamphetamine
> an individual might have for distribution, as opposed to personal use," does
> not identify what amount, according to Erk, would point to intended sales
> rather than use.

*Id.* at 828-29.

The government's notice in this case falls well short of even the disclosure found

inadequate in *Duvall*. From the government's cursory notice, Mr. Duran Gomez has no

way of knowing what opinions Ms. Thomas and Ms. Jeanguenat will offer. Their

testimony is sure to touch on DNA analysis in some way, but neither the Notice nor the

discovery "summarize[s] what the expert will actually say about th[at] topic[]." *Williams*,

900 F.3d at 489.

> **D.    The Court should bar the government's expert witnesses from testifying
> or, in the alternative, order the government so supplement its Notice
> within thirty days.**

When a party fails to comply with Rule 16, a district court "may: (A) order that

party to permit the discovery or inspection; specify its time, place, and manner; and

prescribe other just terms and conditions; (B) grant a continuance; (C); prohibit that party

from introducing the undisclosed evidence; or (D) enter any other order that is just under

the circumstances." Fed. R. Crim. P. 16(d)(2); *see Cuellar*, 478 F.3d at 293; *Anderson*, 446

F.3d at 875. Here, given the tight scheduling order to which the parties have agreed, and

the age of this case, the Court should prohibit the government from introducing any expert

testimony from witnesses identified in the Notice, or providing even later notice of other experts not identified in this Notice.

That scheduling order affords Mr. Duran Gomez five months—from June 16, 2021, to November 10, 2021—in which to review the government's expert disclosures and consult his own potential experts before he is required to provide the government with notice of the experts he intends to call at trial. *See* ECF No. 666 at 1-2. Performing those tasks based on the current Notice is impossible. Because that Notice utterly fails to provide the information required by Rule 16(a)(1)(G), Mr. Duran Gomez cannot ask his own experts whether the government witnesses' opinions are vulnerable to attack; mount a challenge to the witnesses' expert qualifications under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); or decide which, if any, rebuttal experts he should put on the stand. The only way Mr. Duran Gomez can make those decisions is if he receives both additional information from the government and additional time. But that course would necessitate a continuance. And as explained above, continuing trial in this case yet again would be inappropriate in light of the fifteen years that have already passed since the conduct alleged in the indictment. To avoid prolonging this case even further, the Court should exclude any testimony from the government's improperly noticed witnesses. *See Holmes*, 670 F.3d at 599 (citing prior case in which court held there was "no abuse of discretion to exclude expert witness's testimony" where party "turned over the witness's resume, but there was nothing in the record that demonstrated that [the party] complied with the other requirements of Rule 16").

The remedy of exclusion is admittedly harsh, but the defense has been seeking information about the government's forensic evidence for nearly two years, and that

production is still not complete.  *See* Exhibit 2 (Letter from February 18, 2020) at 2-3; Exhibit 3 (Letter from January 26, 2021) at 3-4, 7-9; Exhibit 4 (Letter from May 21, 2021) at 3, 5-6, 11-14.

In the alternative, the Court should order the government to remedy its deficient Notice within thirty days by filing a supplemental notice that includes an adequate "written summary" of each expert's testimony, including "the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."  Fed. R. Crim. P. 16(a)(1)(G). If the government's witnesses testify based on the current Notice, Mr. Duran Gomez will be "blindsided" at trial, which would "undermin[e] the goals" of Rule 16.  *Cruz*, 363 F.3d at 196 n.2.  Those witnesses should not be permitted to testify unless the government first makes a full and adequate disclosure under Rule 16(a)(1)(G), so that Mr. Duran Gomez can interrogate their conclusions, investigate their backgrounds for purposes of a possible *Daubert* challenge, retain rebuttal experts, and make an informed choice about which expert witnesses to notice.

## III.    Conclusion

For the reasons described above, the Court should prohibit the government from eliciting trial testimony from any expert witness identified in its deficient Notice, and should preclude the government from calling any additional expert witnesses for which notice was not given by the deadline.  In the alternative, the Court should direct the government to file, within thirty days, a supplemental notice of expert testimony under Rule 16(a)(1)(G).  Finally, Mr. Duran Gomez requests that the Court continue his deadline for providing notice of his expert witnesses and for filing *Daubert* motions to no sooner than 90 days after the government has provided a proper expert notice with underlying data

16

and reports. Other defense deadlines may also be impacted by the government's late Expert

Notice (such as pretrial motions), but will be addressed by separate motion if necessary.

Undersigned counsel have conferred with government counsel, who have advised

that they oppose this motion.

Respectfully submitted,

/s/ Wendell A. Odom, Jr
WENDELL A. ODOM, JR.
Texas State Bar #15208500
Federal Bar #0947
440 Louisiana, Suite 200
Houston, TX 77002
(713) 223-5575
(713) 224-2815 (FAX)

/s/ James Wyda
JAMES WYDA (#25298)
Federal Public Defender
Office of the Federal Public Defender
100 S. Charles Street
Tower II, 9th Floor
Baltimore, MD 21201
(410) 962-3962
(410) 962-0872 (FAX)
jim_wyda@fd.org

/s/ Neal Davis, III
NEAL DAVIS, III
Texas State Bar #24038541
Federal Bar #706329
440 Louisiana, Suite 200
Houston, TX 77002
(713) 223-5575
(713) 224-2815 (FAX)

/s/ Julie L.B. Stelzig
JULIE L.B. STELZIG (#27746)
Assistant Federal Public Defender
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 344-0600
(301) 344-0019 (FAX)
julie_stelzig@fd.org