United States District Court
for the Southern District of Texas
Houston Division

| | | |
|---|---|---|
| **United States of America** | * | |
| v. | * | Criminal No. H-10-459 |
| **Wilmar Rene Duran Gomez** | * | |

<u>**Post-Hearing on Motion to Suppress the Fruits of Illegal Arrest**</u>

**I.      ICE agents lacked probable cause to make an immigration arrest.**

The government argued that "[t]hrough prior research the arresting officers knew that Duran was not a United States Citizen and had a prior conviction for which he was deportable." ECF No. 531 at 5. The evidence from the hearing did not establish this. To the contrary, DHS Agent Ross Neal ("Neal") testified that the "research" he had available was a print-out showing Mr. Duran Gomez's prior convictions. (Transcript at 26-27, attached as Exhibit C); Government Ex. A (print-out).

On cross-examination, however, Neal did not recall whether he looked at the court records underlying the convictions, even though he agreed a review of those records was necessary to determine whether they were aggravated felonies or crimes involving moral turpitude (CIMT). Tr. at 57, 60, 30.  A review of those records reveals that: (1) the 2002 aggravated assault conviction did not qualify as an aggravated felony because Mr. Duran Gomez served less than one year in jail, *see* 8 U.S.C. § 1101(a) (43) (F) (crime of violence qualifies as aggravated felony only if "the term of imprisonment [is] at least one year."); and (2) the 1993 theft conviction did not qualify as a CIMT at the time of arrest, as neither Texas courts nor the BIA had issued an opinion that it so

1

qualified.[1] Ultimately, the government's only witness could not explain the basis for arresting Mr. Duran Gomez on immigration charges, Tr. at 58. On this record, the government has failed to meet its burden to prove that Mr. Duran Gomez's arrest was supported by probable cause to believe he was subject to removal.

II. **The government failed to meet its burden to prove that agents had probable cause to arrest Mr. Duran Gomez for smuggling or murder.**

The government's brief relied primarily on information provided by a confidential informant who contacted ICE on November 20, 2006.  ECF No. 531 at 6-7.  To establish the credibility of this informant, the government called Neal to testify about his experience with her. But Neal could not recall with any specificity how long he had known the informant, or provide any detail about why he believed her to be reliable other than to say she had provided information in a single investigation that he believed involved "two or three indictments and convictions." Tr. at 17-18.  He did not describe whether her prior information had been corroborated, or provide any other details this Court can use to assess her credibility. *See id.* This stands in marked contrast to other cases in which probable cause relies heavily on an informant's information. *See, e.g.*, *United States v. Huebner*, 356 F.3d 807, 809-10 (7th Cir. 2004).

In addition, although Neal appeared confused about the basis of the informant's information, the ROI completed on December 5, 2006 by Agent Ray Lamb (whom the government chose not to call to testify) states clearly that the informant "came by all the information second hand and had no direct discussions with DURAN about the incident." Defense Exhibit 23 at 2.

---

[1] Defense Exhibit 37 contains the underlying court records for these two convictions. The fax cover sheet shows these records were requested on a rush basis on November 21, 2006. *See* Ex. 37 at 1-2. This exhibit shows both that DHS agents understood the importance of obtaining these records (and not simply relying on print-outs such as Government Exhibit A), but also that DHS agents either did not wait for them to arrive, or chose to ignore their contents by citing an aggravated felony and two CIMTs as the basis for arresting Mr. Duran Gomez.

Because the informant's information was all second-hand, there is no way to assess its reliability without further investigation. Yet Neal admitted he made no efforts to speak to the source of the informant's information, investigate her criminal background (which included convictions impacting credibility), or otherwise verify what she purportedly told the informant. Tr. at 44-45.

The government argues some of the informant's information about the crime was corroborated by evidence found at the scene where the bodies were recovered, e.g., the truck was stolen and had been set on fire. ECF No. 531 at 7. Yet Neal testified that the first thing the informant said when she called him on November 20, 2006, was: "Did you see on the news where there were two Hispanic people that had been beaten and killed and found in a stolen vehicle?" Tr. at 18. News reports at the time described how the two bodies were found in a stolen truck and had a strong odor of gasoline. *See* Exhibit D. Thus the supposedly corroborating facts were available to the informant through public news accounts.[2]

Neal also conceded that when Mr. Duran Gomez was arrested, he was not associated with the address of the warehouse that was searched that same day. Tr. at 50. A law enforcement report run shortly after the search confirms that the warehouse address does not appear. Def. Ex. 12.

### III. The government has not shown that Mr. Duran Gomez was likely to escape before ICE agents could obtain a warrant.

The government has also failed to carry its burden to prove that Mr. Duran Gomez was "likely to escape before a warrant c[ould] be obtained for his arrest." 8 U.S.C. § 1357(a)(2). Neal

---

[2] In its Response (ECF No. 531), the government also asserts that Mr. Duran Gomez was identified as a "smuggler and participant in the murders," but the only source for that information was the informant. The government's response also referred to a witness, Castellon-Paz, who was at the warehouse for a few days prior to the murders. That witness was not shown a photo of Mr. Duran Gomez (although agents had an array available), and did not provide any information suggesting that Mr. Duran Gomez participated in any beatings, let alone the murders. Neal did not address these other assertions, and the government elected not to call Lamb, so the Court should not consider these unproven assertions as a basis for finding probable cause.

testified the informant said Mr. Duran Gomez was thinking of fleeing, and that he believed Mr. Duran Gomez had connections that would enable him to easily leave the country. Tr. at 23-24. Neither withstands scrutiny.

First, the ROI of the initial contact with the informant make <u>no mention</u> of any plans or thoughts of fleeing. Def. Ex. 23. Nor did Neal produce any notes from the initial meeting with the informant or even recall if he had taken notes, so there is nothing to support this assertion that appears for the first time 15 years after the fact, and during a contested hearing. Tr. at 39-40.

Second, as Neal conceded, nothing about Mr. Duran Gomez's conduct suggested he was about to flee: he was still at his home a week after the murders, he was seen driving around the evening of November 20 and then returned home, and when he exited his home on November 21, he was not acting furtively, carrying luggage, or otherwise acting as if he was planning to flee. Tr. at 61-62.

Third, the agents had Mr. Duran Gomez under constant surveillance for more than 20 hours, during which time it would not have been feasible for him to flee. Def. Ex. 22. Fourth, Neal provided no explanation for why he could not obtain a warrant to arrest Mr. Duran Gomez during the 20-plus hours before they arrested him, other than to say that arrest warrants are "not normally obtained before" arrest. Tr. at 69.

Section 1357(a) authorizes a warrantless arrest only if the agent is unable to obtain a warrant before the suspect would flee. The government cannot meet this burden. Even assuming Neal reasonably feared Mr. Duran Gomez would flee, he never explained why there was insufficient time to obtain a warrant. Suspicion of flight is not enough; flight must be so imminent that obtaining a warrant is impossible.

**IV.     Suppression is the proper remedy for ICE agents' violation of § 1357(a).**

Because the government has not established probable cause to believe Mr. Duran Gomez committed a crime, ICE agents' warrantless arrest violated the Fourth Amendment. But even if agents had probable cause of a crime, suppression would still be required because the arrest exceeded agents' statutory authority under § 1357(a), as there was no basis to believe he would escape before a warrant could be obtained. ECF No. 622 at 8-21.

In addition, Neal testified Mr. Duran Gomez was not taken before a magistrate judge after he was arrested. Tr. at 65-66. The government should not be able to rely on an assertion of probable cause to arrest for federal crimes when it clearly made no effort to provide accompanying safeguards, but instead interrogated him after 20 hours of post-arrest detention. Def. Ex. 36.

Neal also admitted DHS agents do "not normally obtain" warrants before arresting people under § 1357 (Tr. at 69) – an admission that the agents routinely disregard and act outside their statutory authority. Agents repeatedly used this practice – in this case – to arrest criminal suspects on immigration offenses, without warrants or the procedural protections that would follow a criminal arrest. *See* Def. Exhibits 20, 38, 39, 41, 43 (attached, with relevant language highlighted). This repeated use of pretextual, unlawful immigration arrests is exactly the kind of flagrant, knowing conduct that the exclusionary rule is designed to deter, and it justifies exercising the Court's inherent supervisory authority to order suppression here. *See United States v. Santos-Portillo*, 997 F.3d 159, 170 (4th Cir. 2021) (Floyd, J., dissenting).

In enacting Section 1357, Congress chose to impose a restraint on government action above the Fourth Amendment floor. Because of the agents' repeated and egregious disregard for the limits of their lawful arresting authority, this Court should suppress all fruits of Mr. Duran Gomez's unlawful arrest.

Respectfully submitted,

/s/ Wendell A. Odom, Jr
WENDELL A. ODOM, JR.
Texas State Bar # 15208500
Federal Bar # 0947
440 Louisiana, Suite 200
Houston, TX 77002
(713) 223-5575
(713) 224-2815 (FAX)

/s/ Neal Davis, III
NEAL DAVIS, III
Texas State Bar #24038541
Federal Bar # 706329
440 Louisiana, Suite 200
Houston, TX 77002
(713) 223-5575
(713) 224-2815 (FAX)

/s/ James Wyda
JAMES WYDA (#25298)
Federal Public Defender
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland 21201
(410) 962-3962
(410) 962-0872 (FAX)
Email: jim_wyda@fd.org

/s/ Julie L.B. Stelzig
JULIE L.B. STELZIG (#27746)
Assistant Federal Public Defender
6411 Ivy Lane, Suite 710
Greenbelt, Maryland 20770
(301) 344-0600
(301) 344-0019 (FAX)
Email: julie_stelzig@fd.org